DREMCO, INC., Plaintiff-Appellee, v. HARTZ CONSTRUCTION COMPANY, Defendant-Appellant.

First District (2nd Division)  No. 1—93—2127

Opinion filed April 12, 1994.

McDermott, Will & Emery, of Chicago (William P. Schuman, Christine M. Drylie, and Judith A. Kelley, of counsel), for appellant.

Sachnoff & Weaver, Ltd., of Chicago (Joel S. Feldman and Michael D. Richman, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:
Defendant, Hartz Construction Company (Hartz), appeals from

an order requiring it to annex certain property to the Village of Alsip, Illinois (Alsip), as it agreed to do in a settlement agreement with plaintiff, Dremco, Inc. (Dremco). The issues presented for review are whether (1) the circuit court erred in construing the settlement agreement; (2) the circuit court erred in directing Hartz to annex its property to Alsip, a nonparty; (3) Hartz is judicially estopped from now complaining that the circuit court lacked authority to enter the order; and (4) the order violates Hartz' due process rights. We affirm.

Both Hartz and Dremco are Illinois corporations engaged in the business of building and selling residential homes and commercial developments. In 1986, they executed a joint venture agreement forming the Laramie Square Partnership. The partnership purchased land at 122nd Street and Laramie Avenue in Alsip (the Laramie property) to develop for residential use. Hartz and Dremco were to share in the profits on a 50/50 basis. Subsequently, in late 1988, the partnership also acquired approximately 40 acres of land at 115th Street and Central Avenue in unincorporated Cook County (the subject property or the cemetery property).

Numerous disputes arose between Hartz and Dremco, ultimately resulting in the filing of the instant lawsuit. In its original complaint, Dremco alleged that Hartz, as managing partner of the Laramie property, had wrongly awarded itself extra profits. During trial, the evidence disclosed a second, fundamental dispute between the parties: Hartz preferred annexation of the subject property to Oak Lawn, while Dremco desired Alsip.

Before trial was completed, on May 29, 1992, the parties signed a letter of intent to settle all outstanding issues through negotiation. They later executed a formal settlement agreement on September 11, 1992. In the agreement, the parties resolved the dispute concerning profits earned on the Laramie property. They also divided the subject property in half, with Dremco taking fee simple in the western 20 acres and Hartz taking the same in the eastern 20 acres. The only reference in the agreement concerning annexation of the subject property was contained in the preamble section and provided:

"WHEREAS, Dremco desires to annex the west one-half ($1/2$) of the cemetery property to Oak Lawn and Hartz desires to annex the east one-half ($1/2$) of the cemetery property to Alsip."

According to Dremco, it paid Hartz a premium of $670,000 to receive the western 20 acres, because land values are higher in Oak Lawn and Dremco would not have to compete directly with Hartz, which had agreed to annex its 20 acres to Alsip.

In the litigation that followed, Hartz' counsel represented to the

circuit court on three occasions that it intended to annex its 20 acres to Alsip, as agreed by the parties. These statements are described more fully later in this opinion.

In May 1993, Hartz decided to seek annexation of three of its 20 acres to Oak Lawn rather than Alsip, and to seek annexation of the other 17 acres to Alsip.

On May 12, 1993, Dremco filed a motion to enforce the terms of the settlement agreement, along with a supporting memorandum, seeking an order directing Hartz to annex its entire 20 acres to Alsip. The motion declared that Dremco will suffer disastrous economic loss if Hartz is permitted to violate the agreement; Dremco never would have paid the $670,000 premium without Hartz' promise to annex its 20 acres to Alsip; the premium was justified only because Dremco's Oak Lawn housing would draw a higher price and Dremco would not be competing with Hartz in the same village; Hartz was attempting to annex three of its 20 acres to Oak Lawn solely as a pretext to require Dremco to build an extra street on its property for the benefit of Hartz and to the detriment of Dremco; and Hartz must be ordered to comply with the settlement agreement, the premise of which was to separate completely the two warring parties. Dremco's motion also recounted the three statements of Hartz' counsel that Hartz was committed to annex its 20 acres to Alsip.

The motion noted a third dispute between the parties involving 13.8 acres of land immediately to the north of the subject property, which Hartz had contracted to purchase from a third party. Dremco filed a separate lawsuit challenging this purchase under the corporate opportunity doctrine. On December 18, 1992, the court ordered Hartz to direct the annexation of the 13.8 acres to Oak Lawn "together [and] on the same day" as Dremco's 20 acres.

Hartz' memorandum in opposition to Dremco's motion admitted that Hartz intended to annex three of its 20 acres to Oak Lawn; averred that the settlement agreement in no way required it to annex its 20 acres to Alsip; denied that the three statements of its counsel indicated it had promised to seek annexation of the 20 acres only to Alsip; claimed that the $670,000 payment was not as Dremco insisted; and professed that it must annex the three acres to Oak Lawn so that its 13.8 acres would not be landlocked and would retain their value.

After hearing oral argument on Dremco's motion, the circuit court orally ordered Hartz to annex its entire 20 acres to Alsip. In doing so, the court found that Hartz' counsel stated in court "on more than one occasion" that "20 acres goes to Alsip, the other 20 acres of *** Dremco goes to Oak Lawn. That is the agreement. That

is why they finally settled the case." In a written order, the court again directed Hartz "to annex all 20 of [its] acres to Alsip" and provided that there is no just reason to delay enforcement or appeal. (See 134 Ill. 2d R. 304(a) (amended).) Hartz appeals.

## I

The gist of Hartz' contentions is that the circuit court erred in construing the settlement agreement. According to Hartz, the agreement's unambiguous language shows that it is not required to annex its 20 acres to Alsip. Hartz maintains that, in finding otherwise, the circuit court improperly considered extrinsic evidence—namely, the statements of Hartz' own counsel. If those statements were properly considered, Hartz submits in the alternative, they do not support the court's holding.

## A

■ Assuming, *arguendo*, the statements of Hartz' counsel are extrinsic evidence, Dremco first counters that Hartz waived its challenge to the court's consideration of that evidence. We agree.

Evidence violating the parol evidence rule can be considered if not objected to at trial. (*Tolbird v. Howard* (1969), 43 Ill. 2d 357, 362, 253 N.E.2d 444; *Harrington v. Kay* (1985), 136 Ill. App. 3d 561, 565, 483 N.E.2d 560.) Here, Dremco specifically relied upon the three statements of Hartz' counsel in arguing that the agreement required Hartz to annex its 20 acres to Alsip. Hartz never countered that the circuit court could not consider those statements because they were extrinsic evidence, violative of the parol evidence rule. Rather, Hartz contended that the agreement was not mandatory with respect to annexation and, furthermore, the statements of its counsel carried a meaning contrary to that asserted by Dremco. Under these circumstances, Hartz waived any challenge it may have had to the circuit court's consideration of its counsel's three statements.

Hartz urges that none of those three statements show an agreement by Hartz to annex its 20 acres to Alsip. Scrutiny of each of these statements and the circumstances in which they were generated points to a contrary conclusion.

Hartz' counsel made the first statement at a hearing held December 18, 1992. There, the circuit court ordered Hartz to direct the annexation of the 13.8 acres to Oak Lawn "together [and] on the same day" as Dremco's 20 acres. The following colloquy occurred:

> "[HARTZ' COUNSEL]: Your Honor, let me just, with this little map, show you. ***
> The yellow shaded part is going to Oak Lawn and the right-hand side is going to Alsip. There's no dispute on that.

THE COURT: That's the way I understood it."

As to this statement, Dremco's position is that Hartz' counsel represented to the court "there was absolutely 'no dispute' that Hartz agreed to annex all of its 20 acres to Alsip." Hartz rebuts that, at the time of the hearing, it was planning to seek annexation of its 20 acres to Alsip; however, that was not the issue before the court. According to Hartz, the dispute before the court involved only the annexation of the 13.8 acres and the comment of its counsel was "simply an explanation as to what matters were then in dispute."

The second statement is contained in an answer Hartz filed January 19, 1993. It provides: "Hartz affirmatively avers that *** as of May 29, 1992, Dremco and Hartz had entered into a binding agreement calling for Hartz to annex half of the Joint Venture Land to Alsip."

Dremco observes that Hartz' counsel made this statement while referring to the settlement agreement between the parties and called it a "binding agreement." The reference, more accurately, is to the letter of intent the parties had signed as a precursor to the settlement agreement. Nevertheless, as stated in Hartz' brief, it is undisputed that the settlement agreement incorporated the terms of the letter of intent. Hartz responds that, in this statement, its counsel was merely calling attention to the fact that the 40 acres were no longer owned by the joint venture but by Hartz and Dremco with 20 acres each, a fact which was relevant to the court in deciding the issue before it at that time.

The third statement, contained in Hartz' "Reply in Support of Motion to Enforce Settlement Agreement," apparently filed in November 1992, provides: "All along, the parties had agreed to divide up the 'Cemetery Property' *** allowing annexation of Dremco's portion to Oak Lawn and Hartz' portion to Alsip." Hartz asserts that the operative word here was "allow," meaning that the parties could do as each pleased with regard to its 20 acres.

The three statements by Hartz' counsel overwhelmingly support the circuit court's decision. Hartz' counsel repeatedly told the court that Hartz, in the agreement, had promised to annex its 20 acres to Alsip. The circuit court acted appropriately in enforcing the agreement against Hartz as its counsel had represented it.

B

In the alternative, Dremco argues that the circuit court found the three statements of Hartz' counsel to be judicial admissions and were therefore properly considered.

Judicial admissions are formal acts of a party or its attorney in

court, dispensing with proof of a fact claimed to be true, and are used as a substitute for legal evidence at trial. (*Baker-Wendell, Inc. v. Edward M. Cohon & Associates, Ltd.* (1981), 100 Ill. App. 3d 924, 928-29, 427 N.E.2d 317; *Frisch v. International Harvester Co.* (1975), 33 Ill. App. 3d 507, 519-20, 338 N.E.2d 90.) Judicial admissions include admissions in pleadings, as well as admissions in open court, stipulations, and admissions made pursuant to requests to admit. (*Rosbottom v. Hensley* (1965), 61 Ill. App. 2d 198, 215, 209 N.E.2d 655.) What constitutes a judicial admission must be decided under the circumstances in each case, and before a statement can be held to be such an admission, it must be given a meaning consistent with the context in which it is found. (*Standard Management Realty Co. v. Johnson* (1987), 157 Ill. App. 3d 919, 925, 510 N.E.2d 986.) Judicial admissions are binding and admissible regardless of whether the parol evidence rule is invoked. (*Tolbird v. Howard* (1969), 43 Ill. 2d 357, 362-63, 253 N.E.2d 444.) An abuse of discretion standard applies when reviewing a circuit court's treatment of judicial admissions. (See *Lowe v. Kang* (1988), 167 Ill. App. 3d 772, 777, 521 N.E.2d 1245.) An abuse of discretion may be found only where no reasonable person would take the view adopted by the circuit court. *Vaughn v. Northwestern Memorial Hospital* (1991), 210 Ill. App. 3d 253, 259, 569 N.E.2d 77.

It is unnecessary to review each of the three statements in detail again. The circuit court held that these statements constituted admissions by Hartz' counsel that Hartz agreed in the settlement agreement to annex its 20 acres to Alsip. This finding is supported by those statements. On appeal, Hartz expends considerable effort explaining the circumstances surrounding each statement. An examination of the contexts in which the statements are found, however, does little to bolster Hartz' position. Consequently, it cannot be said that the circuit court abused its discretion in ruling the statements were admissions showing that Hartz agreed, in the settlement agreement, to annex its 20 acres to Alsip.

Hartz correctly asserts that the second statement, which was apparently a portion of Hartz' answer in another case, by law can be no more than an evidentiary admission. (See *Goodwin v. ITT Commercial Finance Corp.* (1986), 146 Ill. App. 3d 810, 814, 497 N.E.2d 331.) Nevertheless, an evidentiary admission may be considered by the circuit court in making its ruling, although it is not conclusive. (See *In re Marriage of O'Brien* (1993), 247 Ill. App. 3d 745, 749, 617 N.E.2d 873; *Goodwin*, 146 Ill. App. 3d at 814.) Therefore, whether the second admission is categorized as a judicial admission or an evidentiary admission is irrelevant for purposes of this appeal.

In conclusion, Hartz' contention that the circuit court erred in

construing the settlement agreement is rejected under both the theories of waiver and judicial admission.

## II

Hartz next advances several arguments based upon the premise that only Alsip can decide whether to annex Hartz' property.

Hartz first argues that the court lacked the authority to enter the order directing it to annex its 20 acres to Alsip. According to Hartz, because this order requires Alsip to accept annexation of the 20 acres, it must be reversed since a court is without jurisdiction to enter an order of judgment affecting the interests of a party not before the court.

Hartz next claims that the circuit court's order "usurped Alsip's right to make its own annexation decision concerning Hartz' property." Hartz correctly notes that the legislature alone has the authority to allow the alteration of municipal boundaries by annexation or otherwise. (*In re Petition to Annex Certain Territory to the Village of North Barrington* (1991), 144 Ill. 2d 353, 361, 579 N.E.2d 880.) For that reason, the legislature has enacted an annexation statute (65 ILCS 5/7—1—1 *et seq.* (West 1992)), which governs the process.

A review of the annexation statute reveals that both landowners and municipalities are required to abide by it. The statute confers upon landowners the right to petition a municipality for annexation. (65 ILCS 5/7—1—2, 7—1—8 (West 1992).) If electors reside on the land, a majority of those electors must also join in the petition for annexation. (65 ILCS 5/7—1—2, 7—1—8 (West 1992).) In most cases, a municipality can refuse to annex the land described in the petition.[1] See 65 ILCS 5/7—1—5 (West 1992).

Under the circumstances of this case, the circuit court was without power to order Alsip to annex Hartz' 20 acres. Nevertheless, the court's order need not be read as requiring Alsip to annex Hartz' property. The court's order states: "Hartz [is] ordered to annex all 20 of [its] acres located at 115th and Central to Alsip." According to Dremco, this order may be understood only to require Hartz to exercise "good faith and fair dealing, and utilize reasonable efforts" to cause the annexation of its 20 acres to Alsip. We agree.

■ Hartz maintains further that the parties did not have the power to make the agreement the circuit court found, because only municipalities have the authority to annex land. Hartz argues that

---

[1]In certain instances the electors may force a referendum and, if a majority of the electors then vote for annexation, that decision will override a municipality's rejection of the annexation. 65 ILCS 5/7—1—6 (West 1992).

landowners do not have the right to annex their land into the municipality of their choice. Therefore, Hartz concludes, any agreement between the parties to annex their property into a certain municipality would be unenforceable and void as against public policy. The cases cited by Hartz, *Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.* (N.D. Ill. 1983), 568 F. Supp. 1096, 1099, and *Popovich v. Ram Pipe & Supply Co.* (1980), 82 Ill. 2d 203, 208, 412 N.E.2d 518, offer no direct support.

In the instant case, the circuit court found that Hartz agreed to annex its 20 acres to Alsip. Hartz fails to advance any public policy reason why it could not contract to do so, except that Alsip may refuse to annex the property. This is not a rational basis for allowing Hartz to escape its promise. The order only requires Hartz to use its best efforts to annex the property to Alsip. Therefore, Hartz' contention is rejected.

## III

█ Dremco asserts that Hartz should be judicially estopped from now complaining that the circuit court lacked authority to enter the order directing annexation. Since affirmance of the circuit court's decision is appropriate without invoking this doctrine, we need not address this issue.

## IV

█ Hartz lastly argues that the circuit court's order constitutes a taking of its property without due process of law. Hartz has waived this issue by raising it for the first time on appeal. See *People ex rel. Hartigan v. National Anti-Drug Coalition* (1984), 124 Ill. App. 3d 269, 272-73, 464 N.E.2d 690.

For the foregoing reasons, the decision of the circuit court is affirmed.

Affirmed.

DiVITO, P.J., and SCARIANO, J., concur.