FIFTH DIVISION

No. 1-09-2028

| | | |
|---|---|---|
| MIGDALIA SERRANO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 L 11063 |
| | ) | |
| CARLOS A. ROTMAN, | ) | Honorable |
| | ) | John B. Grogan, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.

Justices Howse and Epstein[1] concurred in the judgment and opinion.

## OPINION

This medical malpractice claim arose following complications from reverse tubal ligation surgery. Migdalia Serrano (plaintiff) alleged that Dr. Carlos Rotman was negligent in his care and treatment, and that such negligence was a proximate cause of her injury. A jury found in favor of Dr. Rotman. Plaintiff now appeals, alleging that (1) the trial court's ruling in regard to Dr. Rotman's Illinois Supreme Court Rule 216 (Ill. S. Ct. R. 216 (eff. Aug. 1, 1985) (hereinafter Rule 216)) answer to plaintiff's requests to admit was improper, (2) the trial court's denial of plaintiff's

---

[1]Justice Michael P. Toomin originally participated in this cause. However, he has since left this Court. Justice James Epstein, in Justice Toomin's stead, has considered the briefs, record and oral argument in this matter, and now joins in the instant decision.

motion for judgment notwithstanding the verdict was improper, (3) the trial court's refusal to submit Illinois Pattern Jury Instructions, Civil, No. 10.01 (2006) was an abuse of discretion, and (4) the trial court's rulings as to the admissions of evidence were improper. For the following reasons, we affirm.

## BACKGROUND

In 1984, plaintiff had a tubal ligation. On March 26, 1996, plaintiff visited Dr. Rotman's office, where she expressed a desire to reverse the tubal ligation. She was provided with medical history forms to complete. Plaintiff answered "no" to having any "bleeding tendencies." She completed the section regarding her children and did not indicate that her son was a hemophiliac. Plaintiff left the section titled "any other information you would like us to know," blank.

Dr. Rotman then performed an ultrasound on plaintiff and noted that everything was normal. Plaintiff chose not to undergo the reversal surgery at that time because of finances.

On January 13, 1998, plaintiff returned to Dr. Rotman's office and completed a new patient registration form. She met with certified medical assistant (CMA) Sandra Gutierraz. Gutierraz testified that had plaintiff advised her of any changes or any additional medical history from her prior visit, or that she was a hemophilia carrier, Gutierraz would have documented and flagged such information.

Dr. Rotman examined plaintiff. Plaintiff indicated that she was experiencing pelvic pain. Dr. Rotman discovered that plaintiff had developed endometriosis and indicated that he could treat that at the same time as her reverse tubal ligation surgery. Plaintiff's surgery was schedule for March 18, 1998.

Plaintiff testified that she returned to Rotman's office prior to surgery to make payments and to have blood drawn for "pre-op" tests including a blood-clotting time test. Plaintiff testified that she told Gutierraz during one of her visits that she had spoken with her son's hematologist about the surgery and that a shipment of Factor IX was being delivered to her home. Subsequently, she called Gutierraz and told her that she needed the Factor IX injected one hour before and one hour after surgery. Plaintiff testified that the day before surgery, Gutierraz called and told her to bring the Factor IX to the surgery.

On March 18, 1998, plaintiff took a limousine to the Surgical Center. Plaintiff's daughter, Celeste, testified that she saw her mother leave the house that morning with nine boxes of Factor IX packed in a large see-through bag.

At the Surgical Center, a nurse completed a "preoperative checklist" on plaintiff. No medications were labeled or indicated in plaintiff's admitting form, but CMA Gutierraz testified that had plaintiff brought medication in, it would have been labeled.

Prior to surgery, plaintiff met with the anesthesiologist, Dr. Jay Kiokemeister. Plaintiff testified that the bag containing Factor IX was placed on a table next to her. Plaintiff further testified that she told Dr. Kiokemeister that she needed the Factor IX one hour before surgery and one hour after surgery because she was a hemophiliac carrier. Dr. Kiokemeister noted on his pre-anesthesia form that "patient has [a] son with history of Factor IX deficiency. Has brought Factor IX in case of urgent matters." Dr. Kiokemeister stated in his deposition that he understood this to mean that the condition was unique to her son, and not applicable to plaintiff. Dr. Kiokemeister further noted that plaintiff's clotting times were within normal range.

According to Dr. Rotman, Dr. Kiokemeister never advised him about plaintiff's Factor IX medication, and Dr. Rotman never saw Factor IX in the operating room.

Dr. Nasiruddin Rana assisted Dr. Rotman with plaintiff's surgery. Dr. Rana testified at trial that he had no knowledge of plaintiff's hemophilia/Factor IX condition and did not recall seeing Factor IX in the operating room.

The surgery was completed at 12:15 p.m., and anesthesia was completed at 1 p.m. Plaintiff did not have any complications during the surgery and was discharged from the recovery room at 5:20 p.m. Plaintiff testified that Dr. Rotman saw her in recovery and told her the surgery went well and that it was not necessary to use her medication. Plaintiff further testified that the bag of Factor IX was returned to a family member in the waiting area of the Surgical Center.

On March 23, 1998, plaintiff arrived at Dr. Rotman's for a postoperative examination. Gutierraz removed her stitches. On March 28, 1998, plaintiff called Dr. Rotman's office and complained of "oozing" and pain. Dr. Rotman was out of town, but CMA Gutierraz had plaintiff come in to the office. Gutierraz cleaned the wound and prescribed antibiotics and Vicodin. Plaintiff testified that Gutierraz advised her to see the doctor in Oakbrook if she got worse and to return to Dr. Rotman's on Monday. Gutierraz, on the other hand, testified that she told plaintiff to see Dr. Rana in Oakbrook, but that plaintiff wanted to try the prescriptions first, and that plaintiff would call if her condition changed.

Later that day, plaintiff went to the emergency room for a hematoma and was then admitted to the hospital where she received intravenous antibiotics. Gutierraz called Dr. Rana to notify him of plaintiff's emergency room visit and admission to the hospital. Dr. Rana called the

hospital and learned that plaintiff had an infected hematoma.

Plaintiff's initial complaint, which was filed on March 15, 2000, claimed that she has not worked since March of 1998, and that she is only able to stand, walk, or sit with her leg down for short time periods without pain and swelling. She named as defendants Dr. Rotman, Dr. Kiokemeister, MacNeal Hospital, Oakbrook Surgical Center, Dr. Brian Ralston, Dr. Rana, Dr. Jose Rodriguez, and Dr. Lawrence Schilder. On December 1, 2000, the court dismissed Oakbrook Surgical Center as a defendant. Thereafter, both Dr. Rana's and Dr. Kiokemeister's motions to dismiss were granted. Plaintiff then voluntarily dismissed the remainder of her case.

On October 11, 2005, plaintiff refiled her cause of action sounding in negligence against MacNeal Hospital and Dr. Rotman. Plaintiff settled with the hospital. Plaintiff alleged that Dr. Rotman was negligent in her care and treatment, and that he deviated from the standard of care in obtaining her medical history and failing to administer Factor IX before or after her surgery. The jury returned a general verdict in favor of Dr. Rotman, and plaintiff now appeals.

ANALYSIS

A. Rule 216 Admission

The following appeared in Dr. Rotman's response to plaintiff's Rule 216 requests for admission, which was signed by his attorney:

"Request: You elected not to infuse [plaintiff] with Factor IX

Concentrate prior to, during or following surgery.

Response: Admitted."

During cross-examination of Dr. Rotman, plaintiff's counsel moved to read into evidence

Dr. Rotman's answer to plaintiff's request to admit and asked the trial court to instruct the jury that such admission was a judicial admission. Plaintiff's counsel argued that such admission "clearly implies that he made a conscious decision" not to administer Factor IX. Defense counsel countered that it was only a judicial admission as to his election not to administer Factor IX, not as to his knowledge that plaintiff had a Factor IX deficiency. The trial court stated that " [w]hat [Dr. Rotman] can say is the reason I didn't elect to infuse her is I didn't know anything about it or whatever medical reason he has, but *** it is an admitted fact that he elected not to infuse her." The trial court went on to say that "the doctor may say that I didn't know anything about it, so *** I did not elect to infuse for whatever reason." Dr. Rotman's response to plaintiff's request to admit was then published to the jury.

During cross-examination, Dr. Rotman testified that he never learned that plaintiff's Factor IX was available at the surgical center. Plaintiff's counsel requested that the trial court "formally instruct the jury that the matter admitted in the request to admit is a judicial and binding admission and cannot be contested in this trial." The trial court stated, "It's an admission of fact," and that the debate was not whether Dr. Rotman elected to give the Factor IX, because that was an admission of fact, but rather what his reason was for not electing to administer Factor IX. The trial court specifically found that Dr. Rotman's reason for not electing to give the Factor IX could certainly have been that he had no knowledge of plaintiff's Factor IX deficiency.

Plaintiff's counsel then resumed cross-examination of Dr. Rotman, where the following complained-of colloquy took place:

"[Plaintiff's counsel]: Now, just so we understand what you're

6

telling us, are you saying that you remember that there was no medication there when you spoke to [plaintiff]?

[Defense counsel]: Objection. It's been asked and answered. He said he never knew at any time about this Factor IX.

THE COURT: He's said that. Let's move on. Asked and answered.

[Plaintiff's Counsel]: I couldn't understand if he says he doesn't remember or if he knows it wasn't there, your Honor.

[Defendant Counsel]: I don't know how he can be more specific, your Honor.

\* \* \*

[Plaintiff's Counsel]: Did you recognize, at the time of this surgery, that a patient who has hemophilia could bleed at any time during and after the surgery and is a higher risk after that?

[Defense Counsel]: Objection, your Honor. The doctor said repeatedly he never knew about hemophilia or Factor IX. So it has no relevance to this surgery whatsoever from the standpoint -

[Plaintiff's Counsel]: That's contested.

THE COURT: I understand that. But he may - you can ask academic questions along those lines.

[Defense Counsel]: Was he asking it generally, or was he asking it

7

trying to infer that [Dr. Rotman] knew when [he] said he never knew -

[Plaintiff's Counsel]:  He doesn't need to make speeches.

THE COURT:  I thought I ruled.

* * *

[Plaintiff's Counsel]: It has been established that you have admitted in this case that you elected not to give Factor IX -

[Witness]:  That's not true. *** You're playing with words.  I never said that.  I cannot elect not to do something that I have no knowledge of.

[Plaintiff's Counsel]:  Were you sitting here and did you hear this presented to the jury, that it was admitted?

[Defense Counsel]:  Objection, your Honor.

[Witness]:  Admitted by you, not by me.

[Defense Counsel]:  How could he do something he knows nothing about?  That's how he answered it.  How many times do we have to go through this?

THE COURT:  I know what the record shows.  This was gone into.  Let's go into something else."

On appeal, plaintiff argues that Dr. Rotman's Rule 216 answer was improperly treated as an evidentiary admission, rather than a judicial admission.  Plaintiff further argues that Dr. Rotman should not have been able to explain the judicial admission, or disavow it, on the witness stand.

8

Dr. Rotman counters that his answer was given proper treatment at trial and that, in any event, plaintiff was permitted to publish his answer to the jury and argue to the jury that such answer should be interpreted to mean Dr. Rotman had knowledge of plaintiff's Factor IX deficiency.

Judicial admissions are formal admissions in the pleadings that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. *Konstant Products, Inc. v. Liberty Mutual Fire Insurance Co.*, 401 Ill. App. 3d 83, 86 (2010). For a statement to constitute a judicial admission, it must be clear, unequivocal, and uniquely within the party's personal knowledge. *Williams Nationalease, Ltd. v. Motter*, 271 Ill. App. 3d 594, 597 (1995). The statement must also be an intentional statement which relates to concrete facts and not an inference or unclear summary. *Poelker v. Warrensburg-Latham Community Unit School District No. 11*, 251 Ill. App. 3d 270, 286 (1993).

An abuse of discretion standard applies when reviewing a circuit court's treatment of judicial admissions. *Smith v. Pavlovich*, 394 Ill. App. 3d 458, 468 (2009) (citing *Dremco, Inc. v. Hartz Construction Co.*, 261 Ill. App. 3d 531, 536 (1994)). An abuse of discretion may be found only where no reasonable person would take the view adopted by the circuit court. *Pavlovich*, 394 Ill. App. 3d at 468. What constitutes a judicial admission must be decided under the circumstances in each case, and before a statement can be held to be such an admission, it must be given a meaning consistent with the context in which it was found. *Pavlovich*, 394 Ill. App. 3d at 468 (citing *Dremco, Inc.*, 261 Ill. App. 3d at 536). It must also be considered in relation to the other testimony and evidence presented. *Pavlovich*, 394 Ill. App. 3d at 468.

A trial court may exclude evidence on an issue which has been judicially admitted because:

(1) the evidence is no longer relevant to the issues remaining in the case; (2) the evidence may be superfluous and confusing; and (3) the other party may not necessarily be entitled to the additional dramatic force of the evidence. *Rath v. Carbondale Nursing & Rehabilitation Center, Inc.*, 374 Ill. App. 3d 536, 539 (2007). The rule is not absolute however, and a trial court is afforded discretion in evidentiary rulings. *Rath*, 374 Ill. App. 3d at 539.

In the circumstances of this case, we cannot conclude that the trial court abused its discretion in its ruling on Dr. Rotman's Rule 216 answer. The Rule 216 request to admit at issue was not clear or unequivocal. Rather, it was ambiguous. As such, the trial court opted to treat the statement as an evidentiary admission rather than a judicial admission, allowing Dr. Rotman to explain the basis for his admission. The basis for Dr. Rotman's answer that he "elected not to administer Factor IX" to plaintiff was that he had no knowledge that it existed, nor that plaintiff was Factor IX deficient. The trial court likewise allowed plaintiff to argue to the jury that the basis for Dr. Rotman's answer that he "elected not to administer Factor IX" was that he had knowledge of plaintiff's condition and chose not to give her medicine despite such knowledge.

Plaintiff urges us to find that Dr. Rotman should have argued ambiguity prior to trial and should not have answered the request as "admitted" if he thought it was ambiguous. However, we note that it is not our position that Dr. Rotman thought the Rule 216 request to admit was ambiguous. Rather, it is our position that Dr. Rotman believed the Rule 216 request to admit had no bearing on knowledge of plaintiff's condition and only went to the fact of whether he administered Factor IX to plaintiff prior to the surgery. At trial, it became apparent that plaintiff meant for the word "election" to mean that Dr. Rotman knew of the Factor IX and made a

conscious decision not to administer it. Because such ambiguity did not present itself until trial, we find that the trial court's treatment of Dr. Rotman's admission did not constitute an abuse of discretion. We cannot say that no reasonable person would have adopted the same view. See *Pavlovich*, 394 Ill. App. 3d at 468.

Plaintiff further argues that her motion for a directed verdict based on Dr. Rotman's Rule 216 admission should have been granted, and that the trial court committed reversible error in not granting such motion. At the close of evidence, plaintiff moved for a directed verdict based solely upon the judicial admission that Dr. Rotman elected not to give Factor IX to plaintiff. The trial court found that Dr. Rotman's knowledge as to plaintiff's Factor IX deficiency was an issue for the jury to decide.

A directed verdict is properly entered in those limited cases where all of the evidence, when viewed in a light most favorable to the opponent, so overwhelmingly favors the movant so that no contrary verdict based on the evidence could ever stand. *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). In ruling on a motion for a directed verdict, a court does not weigh the evidence, nor is it concerned with the credibility of the witnesses; rather, it may only consider the evidence, and any inferences therefrom, in the light most favorable to the party resisting the motion, which is Dr. Rotman in this case. See *Maple*, 151 Ill. 2d at 453. A directed verdict is improper where " 'there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome.' " *City of Mattoon v. Mentzer*, 282 Ill. App. 3d 628, 633 (1996) (quoting *Maple*, 151 Ill. 2d at 454).

11

No. 1-09-2028

We review a trial court's denial of a motion for a directed verdict *de novo*. *Mentzer*, 282 Ill. App. 3d at 633.

In viewing the evidence in a light most favorable to Dr. Rotman, we cannot say that all of the evidence overwhelmingly favors plaintiff. The issue to be determined for the trial court was whether Dr. Rotman had knowledge of plaintiff's Factor IX deficiency. The Rule 216 admission stating that Dr. Rotman admitted that he elected not to administer Factor IX to plaintiff did not conclusively establish that he had knowledge of plaintiff's Factor IX deficiency. To the contrary, as has been discussed above, the only fact such admission established was that Dr. Rotman elected not to administer Factor IX. The basis for such election was very much in dispute. Accordingly, because there was a "substantial factual dispute," the trial court properly denied plaintiff's motion for a directed verdict. See *Maple*, 151 Ill. 2d at 453.

### B. Judgment Notwithstanding the Verdict

Plaintiff next contends that the "evidence in this case, when taken as a whole, so overwhelmingly established Dr. Rotman's liability, that, when coupled with the uncontested evidence on causation and damages, a judgment in plaintiff's favor was warranted." Plaintiff therefore argues that her motion for a judgment notwithstanding the verdict (judgment *n.o.v.*) should have been granted. Dr. Rotman counters that there was conflicting evidence and thus a judgment *n.o.v.* was improper.

We review *de novo* a trial court's denial of a motion for a judgment *n.o.v. Ford v. Grizzle*, 398 Ill. App. 3d 639, 650 (2010). A judgment *n.o.v.* is properly entered where all the evidence, when viewed in the light most favorable to the nonmoving party (Dr. Rotman), so

12

overwhelmingly favors the moving party that no contrary verdict based on that evidence could ever stand. *Maple*, 151 Ill. 2d at 453. In ruling on a motion for a judgment *n.o.v.*, the court does not weigh the evidence, nor is it concerned with the credibility of the witnesses. *Maple*, 151 Ill. 2d at 453. Instead, the court may only consider the evidence, and any rational inferences therefrom, in the light most favorable to the nonmoving party. *Maple*, 151 Ill. 2d at 453.

Further, a judgment *n.o.v.* may not be granted merely because a verdict is against the manifest weight of the evidence. *Maple*, 151 Ill. 2d at 453. "A trial court has no right to enter a judgment *n.o.v.* if there is any evidence demonstrating a substantial factual dispute or where the assessment of the witnesses' credibility or the determination regarding conflicting evidence is decisive to the outcome at the trial." *Grizzle*, 398 Ill. App. 3d at 650 (citing *Maple*, 151 Ill. 2d at 454).

Alternatively, on a motion for a new trial, a court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence. *Grizzle*, 398 Ill. App. 3d at 651 (citing *Maple*, 151 Ill. 2d at 454). A verdict is against the manifest weight of the evidence where the opposite result is clearly evident or where the jury's findings are unreasonable, arbitrary, and not based on the evidence. *Grizzle*, 398 Ill. App. 3d at 651 (citing *Maple*, 151 Ill. 2d at 454). We will not reverse a trial court's ruling on a motion for a new trial unless it is affirmatively shown that the court clearly abused its discretion, because the trial judge had the benefit of observing the witnesses firsthand at the trial. *Grizzle*, 398 Ill. App. 3d at 651 (citing *Maple*, 151 Ill. 2d at 455). In determining whether the trial court abused its discretion, we must consider whether the jury's verdict was supported by the evidence and

whether the losing party was denied a fair trial. *Grizzle*, 398 Ill. App. 3d at 651 (citing *Maple*, 151 Ill. 2d at 455).

After a careful review of the evidence adduced at trial, as set forth above, we cannot find that the jury's findings were unreasonable, arbitrary, and not based upon the evidence. The jury in this case heard conflicting testimony regarding whether Dr. Rotman knew about plaintiff's Factor IX deficiency. CMA Gutierrez testified that she did not recall ever being advised of plaintiff's condition and that if she was so advised, it would have been in plaintiff's medical chart. Dr. Rotman repeatedly testified that he never had knowledge of plaintiff's condition from any source. Plaintiff, on the other hand, testified that she brought the medication with her to the surgery and that it was present in the surgical room with her. Since the witnesses' testimony in this case conflicted, the question of whom to believe and what weight to give to all the evidence was a decision for the trier of fact, whose determinations should not be upset on review unless manifestly erroneous. *Jackson v. Seib*, 372 Ill. App. 3d 1061, 1069 (2007). It is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide the weight to be given to the witnesses' testimony. *Maple*, 151 Ill. 2d at 452. For these reasons, we cannot conclude that the trial court erred in denying plaintiff's requests for a judgment *n.o.v.* or a new trial.

## C. Illinois Pattern Jury Instruction

Plaintiff's next contention on appeal is that the trial court committed reversible error by refusing her Illinois Pattern Jury Instructions, Civil, No. 10.01 (2006) (hereinafter, IPI Civil (2006) No. 10.01), concerning the conduct of CMA Gutierraz. IPI Civil (2006) No. 10.01 is the

14

instruction for ordinary negligence as to an unlicensed person. Plaintiff asserts that one of her theories of recovery was vicarious liability: that Dr. Rotman was liable for the actions or omissions of CMA Gutierraz; and, as such, the trial court committed reversible error by disregarding plaintiff's theory of vicarious liability based on CMA Gutierraz's negligence. Dr. Rotman responds that the trial court's refusal of plaintiff's tendered IPI Civil (2006) No. 10.01 was proper and not an abuse of discretion because the sole defendant in this case was Dr. Rotman.

The determination to provide a particular jury instruction is within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 203 (2006). Specifically, the trial court has the discretion to determine if a particular jury instruction is applicable, supported by evidence in the record, and an accurate statement of the law. *Lewis v. Haavig*, 337 Ill. App. 3d 1081, 1085-86 (2003). "The standard for deciding whether a trial court abused its discretion is whether, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles." *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273 (2002). On appeal, a trial court will not be reversed "for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant." *Schultz*, 201 Ill. 2d at 274.

In the case at bar, the trial court gave the jury a modified version of Illinois Pattern Jury Instructions, Civil, No. 105.01 (2006) (hereinafter, IPI Civil (2006) No. 105.01), which defined professional negligence as to a gynecological surgeon. The court also gave plaintiff's tendered

15

agency instruction, which stated: "Sandra Gutierrez was the agent of the defendant Carlos Rotman, M.D., at and before the time of this occurrence. Therefore, any act or omission of the agent at that time was in law the act or omission of the defendant, Carlos Rotman, M.D." Plaintiff tendered IPI Civil (2006) No. 10.01, which defined ordinary negligence as to an unlicensed person. The trial court deferred ruling, stating, "The doctor is the only one here."

Later, the trial court reconsidered IPI Civil (2006) No. 10.01. Plaintiff argued that what Gutierraz did in the operating room was incompatible with the training and experience of a CMA. The trial court found that delegating responsibility to Gutierraz was Dr. Rotman's responsibility, which is part of the allegations of Dr. Rotman's negligence which, in turn, goes to the jury.

The trial court also struck count II of plaintiff's second amended complaint, which alleged vicarious liability against Dr. Rotman for the conduct of CMA Gutierraz. The issues presented to the jury only reference Gutierraz in the following context: "The plaintiff claims that she was injured and sustained damages, and that the defendant was negligent in one or more of the following aspects: *** (d) improperly delegated to Sandra Gutierraz the task of observing and reporting the plaintiff's post-operative condition." The jury was not presented with any issue related to a finding that CMA Gutierrez was negligent, and thus there would be no need for an instruction on ordinary negligence. Rather, the only defendant was Dr. Rotman, and the jury was free to find that he was professionally negligent in his delegation of duties to CMA Gutierraz, but not that Gutierraz herself was negligent, especially considering the fact that the vicarious liability count was struck from the second amended complaint. Therefore, the issues presented to the jury solely involved Dr. Rotman's conduct, which was covered by IPI Civil (2006) No. 105.01.

16

Plaintiff's reliance on *Petre v. Cardiovascular Consultants, S.C.*, 373 Ill. App. 3d 929 (2007), does not persuade us otherwise. In *Petre*, the plaintiff's theory against a hospital was based on vicarious liability for some negligent act or omission of a hospital employee. The jury was only given instructions pertaining to a vicarious liability theory, and not regarding institutional negligence. The court held that because the jury ultimately found that the doctor did not act negligently, a vicarious liability negligence claim against the hospital could only be based on the negligent act or omission of some other employee of the hospital. Therefore, the court found that because there was no competent testimony regarding the standard of care for such an employee, the jury's verdict was against the manifest weight of the evidence. *Petre*, 373 Ill. App. 3d at 944.

In the case at bar, the jury was not given instructions pertaining to vicarious liability, as that count was stricken from plaintiff's second amended complaint. Rather, they were only given instructions pertaining to Dr. Rotman's conduct, and the professional negligence standard covered by IPI Civil (2006) No. 105.01. The only mention of CMA Gutierraz was whether Dr. Rotman was negligent in his delegation of duties to her; not whether Dr. Rotman was vicariously negligent for her acts or omissions. As such, *Petre* is distinguishable from the case at bar. We find that, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles, and, thus, the trial court did not abuse its discretion in refusing to give an instruction on ordinary negligence. See *Schultz*, 201 Ill. 2d at 273.

## D. Hearsay

Plaintiff's final contention on appeal is that the trial court committed reversible error when it barred her testimony of out-of-court statements made by Dr. Kiokemeister concerning

plaintiff's need for Factor IX, and when it barred her daughter's testimony regarding statements made by an employee at the Oakbrook Surgical Center. Plaintiff argues that the out-of-court statements either fell into an exception to the rule against hearsay, or were not offered to prove the matters asserted. Dr. Rotman responds that the trial court properly barred the out-of-court statements from being admitted into evidence.

" 'Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and it is generally inadmissible due to its lack of reliability unless it falls within an exception to the hearsay rule.' " *People v. Caffey*, 205 Ill. 2d 52, 88 (2001) (quoting *People v. Olinger*, 176 Ill. 2d 326, 357 (1997)). The parties agree as to the standard of review. "Evidentiary rulings are within the sound discretion of the trial court and will not be reversed unless the trial court has abused that discretion." *Caffey*, 205 Ill. 2d at 89. "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Caffey*, 205 Ill. 2d at 89.

## 1. Plaintiff's Testimony

Prior to trial, plaintiff made an offer of proof of her testimony concerning her pre-op conversation with Dr. Kiokemeister for the purpose of showing his state of mind. Following a hearing, the trial court allowed plaintiff's statements to Dr. Kiokemeister but not his responses to her.

In her brief, plaintiff states that "[t]he first statement at issue was that, after learning that

plaintiff brought Factor IX to her surgery, Dr. Kiokemeister told her that he was going to speak with Dr. Rotman. He then left for about 20 minutes." These two sentences are unsupported by record citations. Nevertheless, plaintiff argues that she should have been allowed to testify as to Dr. Kiokemeister's statement regarding his desire to talk to Dr. Rotman because such statement fell within the "state of mind" exception to hearsay.

Statements that indicate the declarant's state of mind are admissible as exceptions to the hearsay rule when the declarant is unavailable to testify, there is a reasonable probability that the proferred hearsay statements are truthful, and the statements are relevant to a material issue in the case. *Caffey*, 205 Ill. 2d at 91 (citing *People v. Floyd*, 103 Ill. 2d 541, 546 (1984)). The state of mind exception applies only to the state of mind of the declarant and not the state of mind of someone other than the declarant. *People v. Lawler*, 142 Ill. 2d 548, 559 (1991).

Here, plaintiff seems to be arguing that Dr. Kiokemeister's statement that he was going to talk to Dr. Rotman indicates that his state of mind was such that he knew about plaintiff's Factor IX deficiency and, thus, the statement goes to the ultimate issue of whether Dr. Rotman knew plaintiff had a Factor IX deficiency. We agree with the trial court's finding that such a statement was offered to prove Dr. Rotman's state of mind, rather than Dr. Kiokemeister's state of mind, and that the prejudice to that statement far outweighed the probative value. We certainly cannot say that the trial court's ruling was arbitrary, fanciful, unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Caffey*, 205 Ill. 2d at 89. Accordingly, we find that the trial court did not abuse its discretion in not admitting Dr. Kiokemeister's alleged testimony.

Plaintiff also contends that a second statement should have been admitted, specifically, what Dr. Kiokemeister said to her when he returned 20 minutes later: "that he spoke with Dr. Rotman and learned that plaintiff's clotting levels were fine, and that her Factor IX would be taken into surgery in case it was needed." Plaintiff argued that such statement was not offered for its truth, but to show her reasonable belief that Dr. Rotman understood her treatment needs before surgery. Again, plaintiff is offering Dr. Kiokemeister's statement to show another person's state of mind. In this instance, it is to show plaintiff's state of mind. As stated above, the state of mind exception only applies to the declarant's state of mind. Accordingly, we find that the trial court did not abuse its discretion in barring testimony regarding Dr. Kiokemeister's alleged statements.

### 2. Celeste's Testimony

Plaintiff's final contention is that her daughter, Celeste, should have been allowed to testify that when she was in the Oakbrook Surgical Center, an employee came out with the bag of Factor IX and stated that "they did not 'need to use this.'" Plaintiff argued that the statement was not being offered to establish that the Factor IX was not needed, but rather to show that the employee knew the product was available to treat plaintiff. Plaintiff has failed to show how the state of mind of this alleged employee is relevant as to whether Dr. Rotman had knowledge of plaintiff's Factor IX deficiency.

Moreover, we find that there was no prejudice here where the statement would be merely cumulative. See *Caffey*, 205 Ill. 2d at 92 (even if hearsay statement was admissible to show state of mind, error would be harmless where excluded evidence is merely cumulative of other evidence

20

presented by the parties). Celeste testified that she saw the Oakbrook Surgical Center nurse hand the bag of Factor IX to the family member and that it appeared that none of the medication had been used. Accordingly, we find that the trial court did not abuse its discretion in barring Celeste from testifying as to the employee's out-of-court statement.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

No. 1-09-2028

Please use the following form

Migdalia Serrano,

Plaintiff-Appellant,

v.

Carlos A. Rotman,

Defendant-Appellee.

Docket No.

COURT

Opinion

Filed

No.  1-09-2028

Appellate Court of Illinois

First District, FIFTH Division

February 4, 2011

(Give month, day and year)

PRESIDING JUSTICE JAMES FITZGERALD SMITH DELIVERED THE OPINION OF THE COURT:

JUSTICES        HOWSE and EPSTEIN, JJ.,    concur.

Lower Court and Trial Judge(s) in form indicated in margin:

APPEAL from the Circuit Court of Cook County; the Hon_____ Judge Presiding.

Appeal from the Circuit Court of Cook County.

The Hon. JOHN B. GROGAN, Judge presiding.

Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel. Indicate the word  r NONE if not represented.

FOR APPELLANTS
John Doe, of Chicago

22

No. 1-09-2028

For APPELLEES, : APPELLANT: DEBRA A. THOMAS, P.C., Glen Ellyn, IL Debra A. Thomas; LAW OFFICE OF HARRY C. LEE, Chicago, IL Harry C. Lee; LAW OFFICES OF KEITH L. DAVIDSON, Chicago, IL Keith L. Davidson

Smith and Smith of

Chicago, APPELLEE: BARKER & CASTRO, LLC, Chicago, IL Krista R. Frick; BOLLINGER, RUBERRY & GARVEY, Chicago, IL John M. Stalmack

(Joseph Brown, of counsel)

Add attorneys for third-

party appellants and/or

appellees.

23