WANDA MAE SMITH, Indiv. and as Special Adm'r of the Estate of Crystal Smith, Deceased, Plaintiff-Appellant, v. JAMES J. PAVLOVICH *et al.*, Defendants-Appellees (Renato R. Katubig *et al.*, Defendants).

Fifth District   No. 5—08—0256

Opinion filed September 10, 2009.

Eric C. Young and Kevin J. Newton, both of William Berry & Associates, LLC, of Belleville, for appellant.

Charles E. Schmidt and Penny J. Pierson, both of Brandon, Schmidt & Goffinet, of Carbondale, for appellees.

JUSTICE WELCH delivered the opinion of the court:

This is a medical malpractice action brought by the plaintiff, Wanda Mae Smith, individually and as the special administrator of the estate of her deceased daughter, Crystal Smith, against a licensed advanced practice nurse, Patricia G. Dillard, R.N., and two doctors, James J. Pavlovich, M.D., and Kathryn A. Churling, M.D., all of whom practiced at the Carbondale Clinic.[1] Crystal was born December 2, 1998, and died March 18, 2002, at the approximate age of three years, from what is believed to have been bacterial meningitis that attacked her brain. In her complaint filed in the circuit court of Jackson County on February 2, 2004, the plaintiff alleges that the defendants were negligent in failing to recommend and administer the vaccine PCV7, known as Prevnar, which she alleges would have prevented the infection.

Crystal visited the Carbondale Clinic as a patient a total of six times. On each occasion she saw only nurse Dillard. Each of these visits was a "focused visit," that is, it was made to address a particular problem such as a cold or a sore throat. None of the visits was for a "well-baby" checkup, which was typically of broader scope than a focused visit. Crystal never saw Dr. Pavlovich or Dr. Churling on any of these focused visits. Crystal was in the presence of Dr. Pavlovich on occasion when she accompanied her mother and her younger sister, Gabrielle, on Gabrielle's well-baby visits with Dr. Pavlovich. Dr. Pavlovich was Gabrielle's pediatrician. He never examined or treated Crystal. Dr. Churling never saw Crystal. Crystal's mother was never offered the vaccine Prevnar for Crystal on any of these focused visits with nurse Dillard or while in the presence of Dr. Pavlovich during Gabrielle's visits.

After several days of a jury trial, upon the motion of the defendants, the circuit court entered several orders that resulted in directed verdicts in favor of each defendant and against the plaintiff. The circuit court granted the defendants' motion to bar the testimony of Dr. Marc Weber regarding the standard of care applicable to advanced practice nurses, because Weber was a physician and not an advanced practice nurse. Because the plaintiff had no other expert witness to testify to the applicable standard of care of an advanced

---

[1]While the original action included two other doctors who at various times had treated Crystal, those doctors were dismissed out of the cause and are not parties to this appeal.

practice nurse and because nurse Dillard had testified that she had met the standard of care, the circuit court directed a verdict in her favor. With respect to the physician defendants, Dr. Pavlovich and Dr. Churling, the circuit court held that the plaintiff was unable to establish a physician-patient relationship and therefore could not prove that the defendant physicians owed Crystal a duty of care. Accordingly, the court directed verdicts in favor of the physician defendants.

The plaintiff appeals these orders, as well as the circuit court's denial of her motion to amend her complaint to add a new theory of negligence—that the defendants were negligent in failing to prescribe high-dose amoxicillin to Crystal when she first became sick. For reasons that follow, we affirm.

We turn first to the circuit court's orders barring the testimony of Dr. Marc Weber regarding the standard of care of an advanced practice nurse and directing a verdict in favor of nurse Dillard. Dillard was a registered nurse who was also certified and licensed as an advanced practice nurse in accordance with the Nursing and Advanced Practice Nursing Act (225 ILCS 65/15—5 et seq. (West 2006)). In order to be so licensed, an individual must be a licensed registered nurse and hold a current national certification from an appropriate national certifying body and have obtained a graduate degree appropriate for national certification in a clinical advanced practice nursing specialty or a graduate degree or post-master's certificate from a graduate-level program in a clinical advanced practice nursing specialty. 225 ILCS 65/15—10(a) (West 2006). Although Dillard had a specialty certification in obstetrics/gynecology, she was working at the Carbondale Clinic in pediatrics.

As an advanced practice nurse, Dillard worked independently of any doctor. She could independently see and care for patients, order and interpret tests, and write prescriptions without being required to confer with or seek the approval of a doctor. She was, however, required to work under a written collaborative agreement with a collaborating physician which, among other things, authorizes the categories of care, treatment, or procedures to be performed by the advanced practice nurse. 225 ILCS 65/15—15 (West 2006). An advanced practice nurse works under the medical direction of the collaborating physician. 225 ILCS 65/15—15 (West 2006). The Carbondale Clinic billed patients the same rate when they saw Dillard as they did when patients saw doctors.

Marc Weber is a medical doctor who is board-certified in pediatrics. He is not a nurse or an advanced practice nurse. He was designated by the plaintiff as her expert witness on the standard of care applicable to Dillard as an advanced practice nurse.

Dillard filed a motion *in limine* to bar the expert testimony of Dr. Weber regarding the standard of care applicable to her as an advanced practice nurse, because in Illinois, in order to offer expert opinion testimony on the standard of care in a given school of medicine, an expert must be licensed in that school of medicine. Because Dr. Weber was licensed as a medical doctor and not a nurse, he was not qualified to offer expert opinion testimony on the standard of care applicable to the nursing profession or advanced practice nurses.

The plaintiff responded that where the defendant was acting essentially as a pediatrician and not as a nurse, she should be subject to the standard of care of a pediatrician and that a pediatrician was competent to offer an expert opinion on the standard of care applicable to pediatricians. The plaintiff argued that Dillard was in reality practicing pediatrics and not nursing.

The circuit court granted Dillard's motion *in limine,* barring the expert testimony of Dr. Marc Weber regarding the standard of care applicable to advanced practice nurse Dillard. Accordingly, Dillard filed a motion for a judgment in her favor because the plaintiff had no other expert witness competent to offer opinion testimony on the applicable standard of care and could not, therefore, establish a *prima facie* case of negligence. Furthermore, Dillard herself had testified that she had not violated the applicable standard of care. The circuit court granted Dillard's motion and directed a verdict in her favor. The plaintiff's posttrial motion was denied.

■ In medical malpractice suits such as the one at bar, the plaintiff must establish the applicable standard of care through expert testimony. *Dolan v. Galluzzo*, 77 Ill. 2d 279, 282 (1979). It is well established that, in order to testify as an expert on the standard of care in a given school of medicine, the witness must be licensed therein. *Dolan*, 77 Ill. 2d at 285; *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 123 (2004). A " 'defendant has the right to have his competence judged by the standards of his own distinct profession and not by those of any other.' " *Dolan*, 77 Ill. 2d at 282, quoting *Dolan v. Galluzzo*, 62 Ill. App. 3d 832, 836 (1978). Accordingly, " 'a practitioner of one school of medicine is not competent to testify as an expert in a malpractice action against a practitioner of another school of medicine.' " *Dolan*, 77 Ill. 2d at 282, quoting J. Vance, Annot., *Competency of Physician or Surgeon of School of Practice Other Than That to Which Defendant Belongs to Testify in Malpractice Case*, 85 A.L.R.2d 1022, 1023 (1962).

In *Dolan*, 77 Ill. 2d at 283, the supreme court explained as follows:
"The rationale of the general rule restricting expert testimony regarding the standard of care owed by a practitioner of a certain

school of medicine is that 'there are different schools of medicine with varying tenets and practices[ ] and that inequities would be occasioned by testing the care and skill of a practitioner of one school of medicine by the opinion of a practitioner of another school' [citation]."

The court further explained as follows:

"Illinois statutes [citations] provide for the regulation of practitioners of medicine and surgery, physical therapy, nursing, pharmacy, dental surgery, podiatry, optometry, etc. This is a clear expression by the legislature of public policy to recognize and regulate various schools of medicine. The various acts regulating the health professions [citations] provide for different training[ ] and regulate the treatment each profession may offer. *** We simply are not disposed to provide for what, in effect, may result in a higher standard of care when the legislature, by recognizing various schools of medicine, has not done so." *Dolan*, 77 Ill. 2d at 284.

While the court in *Dolan* barred the expert testimony of an orthopedic surgeon regarding the standard of care applicable to a podiatrist, the same rationale has been applied to bar the expert testimony of a physician regarding the standard of care applicable to the nursing profession. *Sullivan*, 209 Ill. 2d at 111-23. In *Sullivan*, the plaintiff offered the expert testimony of a board-certified physician specializing in internal medicine to establish the standard of care applicable to nurses. 209 Ill. 2d at 105. The circuit court struck the expert's testimony and the supreme court affirmed. *Sullivan*, 209 Ill. 2d at 118-19.

In *Sullivan*, 209 Ill. 2d at 114, the court explicitly refused to retreat from the rule that a health professional expert witness must be a licensed member of the school of medicine about which the witness proposes to testify, despite language in *Jones v. O'Young*, 154 Ill. 2d 39, 43 (1992), which the plaintiff had argued implied otherwise. The court explained that there are two foundational requirements before an expert witness may testify to the standard of care: the witness must be a licensed member of the school of medicine about which he proposes to testify, and the witness must be familiar with the methods, procedures, and treatments ordinarily observed by other health-care providers in the defendant's community or a similar community. *Sullivan*, 209 Ill. 2d at 114-15. It is only after these two foundational requirements are met that the court goes on to determine whether the allegations of negligence concern matters within the expert's knowledge and observation. *Sullivan*, 209 Ill. 2d at 115. The language in *Jones*, 154 Ill. 2d at 43, on which the plaintiff had relied— "Whether the expert is qualified to testify is not dependent on whether he is a member of the same specialty or subspecialty as the defendant

but, rather, whether the allegations of negligence concern matters within his knowledge and observation"—refers to this final question after the two foundational requirements had been met. *Sullivan*, 209 Ill. 2d at 115. Accordingly, the court held that, instead of retreating from the license requirement, *Jones* clearly reaffirmed it. *Sullivan*, 209 Ill. 2d at 115. Accordingly, the court held that the physician was not competent to testify regarding the standard of care for the nursing profession. *Sullivan*, 209 Ill. 2d at 119.

The court held that the legislature had established nursing as a unique school of medicine distinct from that of a physician. *Sullivan*, 209 Ill. 2d at 119. The court stated as follows:

"By enacting the Nursing and Advanced Practice Nursing Act [citation], the legislature has set forth a unique licensing and regulatory scheme for the nursing profession. *** [U]nder the nursing act, a person with a medical degree, who is licensed to practice medicine, would not meet the qualification for licensure as a registered nurse, nor would that person be competent to sit for the nursing license examination, unless that person completed an accredited program in nursing." *Sullivan*, 209 Ill. 2d at 122.

The court expressly reaffirmed the licensing requirement of *Dolan* and declined the plaintiff's invitation to deviate therefrom. *Sullivan*, 209 Ill. 2d at 123; see also *Garley v. Columbia LaGrange Memorial Hospital*, 351 Ill. App. 3d 398 (2004).

■ Despite this clear precedent from the supreme court, the plaintiff argues that advanced practice nurse Dillard was acting as a pediatrician with respect to Crystal and that therefore a medical doctor specializing in pediatrics was qualified to testify regarding the standard of care applicable to nurse Dillard. We reject the plaintiff's argument. Nurse Dillard was licensed as an advanced practice nurse, not a pediatrician. She was acting in accordance with the statutes and regulations applicable to advanced practice nurses, not those applicable to pediatricians. She was acting under a collaborative agreement with Dr. Churling, as is required of advanced practice nurses but not of pediatricians. Nurse Dillard was performing the duties of an advanced practice nurse. She was subject to the standard of care applicable to advanced practice nurses, not the standard of care applicable to pediatricians. A pediatrician is not competent to testify to the standard of care applicable to advanced practice nurses, even if those nurses are working in pediatrics, any more than an advanced practice nurse working in pediatrics is competent to testify to the standard of care applicable to a pediatrician. The circuit court did not err in granting the defendants' third motion *in limine* to bar the expert opinion testimony of Dr. Marc Weber regarding the standard of care applicable to advanced practice nurses.

■ Because the plaintiff was left with no expert witness to establish the standard of care under which nurse Dillard was required to act and because Dillard herself testified that she had met the applicable standard of care, the circuit court directed a verdict in her favor. Because in directing a verdict the circuit court determines as a matter of law that there are no evidentiary facts out of which the jury may construe the necessary fact essential to recovery, our review is *de novo. Sullivan*, 209 Ill. 2d at 112. A directed verdict will be upheld where all the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Sullivan*, 209 Ill. 2d at 123. If the plaintiff fails to produce a required element of proof in support of her cause of action, then no cause is presented for the jury's consideration and the entry of a directed verdict for the defendant is proper. *Sullivan*, 209 Ill. 2d at 123. Here, the plaintiff was unable to establish the standard of care applicable to Dillard, a required element of proof in support of her cause of action. Accordingly, a directed verdict for Dillard was properly entered.

We turn now to the directed verdicts entered in favor of the physician defendants. The circuit court found that the physician defendants owed no duty of care to Crystal because no physician-patient relationship was ever established between them. The plaintiff argues that there was sufficient evidence to submit to the jury the question of whether there was a physician-patient relationship between the defendants and Crystal.

Because in directing a verdict the circuit court determines as a matter of law that there are no evidentiary facts out of which the jury may construe the necessary fact essential to recovery, our review is *de novo. Sullivan*, 209 Ill. 2d at 112. A directed verdict will be upheld where all the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Sullivan*, 209 Ill. 2d at 123. If the plaintiff fails to produce a required element of proof in support of her cause of action, then no cause is presented for the jury's consideration and the entry of a directed verdict for the defendant is proper. *Sullivan*, 209 Ill. 2d at 123.

■ It is undisputed that neither physician ever saw Crystal as a patient. Neither physician examined or treated Crystal, nor did either physician consult with any other practitioner with respect to Crystal. Neither physician provided any services to Crystal, conducted any laboratory tests, or reviewed any test results. The only contact Dr. Pavlovich had with Crystal was when she was present in the room with her sister, Gabrielle, who was Dr. Pavlovich's patient. Dr. Pavlov-

ich did not examine, treat, or otherwise have any contact with Crystal during these visits.

The only other connection between these defendants and Crystal is that their names appear in the clinic's electronic records indicating that Crystal was their patient, and they sometimes signed off on those records. The defendants explained that their names appeared on clinic records because they were the physicians supervising nurse Dillard on the dates on which she saw Crystal and their signatures were necessary to store nurse Dillard's electronic notes in the clinic's computer system. There is no evidence that either physician defendant discussed any aspect of Crystal's care with nurse Dillard or consulted with her in any way with respect to Crystal. Dr. Churling's only other connection to Crystal was that she was nurse Dillard's collaborating physician.

In a medical malpractice action, a plaintiff must prove a duty owed by the defendant physician, a breach of that duty, an injury proximately caused by the breach, and resultant damages. *Lenahan v. University of Chicago*, 348 Ill. App. 3d 155, 163 (2004). A physician's duty is limited to those situations in which a direct physician-patient relationship exists or there is a special relationship, such as when a physician is asked by another physician to provide a service to a patient, conduct laboratory tests, or review test results. *Lenahan*, 348 Ill. App. 3d at 163. The physician-patient relationship is a consensual relationship in which the patient knowingly seeks the physician's assistance and in which the physician knowingly accepts the person as a patient. *Bovara v. St. Francis Hospital*, 298 Ill. App. 3d 1025, 1030 (1998).

A physician-patient or special relationship may exist even in the absence of any meetings between the physician and patient, where the physician performs services for the patient. *Lenahan*, 348 Ill. App. 3d at 164. Thus, it is not necessary that the patient and physician have actual contact with each other in order for a physician-patient relationship to exist. A physician-patient or special relationship may result when a physician is asked by another physician to provide a service to a patient, conduct laboratory tests, or review test results and does so without ever having contact with the actual patient. *Lenahan*, 348 Ill. App. 3d at 163.

In *Bovara v. St. Francis Hospital*, 298 Ill. App. 3d 1025, 1030 (1998), the court found a question of fact precluding a summary judgment regarding whether a physician-patient relationship existed, where the physicians were asked by another physician to render a medical opinion on whether the patient was eligible for angioplasty, and they reviewed test results and interpreted them, met and

discussed the case with the treating physician, and rendered a medical opinion. However, it has also been held that a physician who gives an informal opinion at the request of the treating physician, but who provides no services, conducts no laboratory tests, reviews no test results, and charges no fee, does not owe a duty of care to the patient whose case was discussed. *Reynolds v. Decatur Memorial Hospital*, 277 Ill. App. 3d 80, 85 (1996).

In the case at bar, not only did the defendant physicians have no actual contact with Crystal, they also were not asked to, and did not, render any medical opinion with respect to her, did not conduct any laboratory tests, and did not review or interpret any test results, as did the physicians in *Bovara*. Indeed, the defendant physicians in the case at bar provided absolutely no services to or on behalf of Crystal. They were not involved in any way with the medical decisions made with respect to Crystal. The physicians' involvement with Crystal in the case at bar was even less than that of the physician in *Reynolds v. Decatur Memorial Hospital*, 277 Ill. App. 3d 80, 85 (1996), and *Gillespie v. University of Chicago Hospitals*, 387 Ill. App. 3d 540 (2008), where the courts found as a matter of law that no physician-patient relationship existed sufficient to impose a duty upon the physician in negligence. Accordingly, the circuit court did not err in directing a verdict in favor of the defendant physicians on the ground that they owed no duty to Crystal because there was no physician-patient relationship between them.

Nevertheless, the plaintiff argues that in his answer to the plaintiff's complaint, Dr. Pavlovich admitted that, "at all times relevant hereto, [he] undertook to provide diagnosis, care[,] and treatment to" Crystal and that this constitutes a binding judicial admission of a physician-patient relationship.

In her complaint, the plaintiff alleges that Crystal was born December 2, 1998, and died March 18, 2002, "as a result of overwhelming infection caused or contributed to be caused by the carelessness and negligence of the Defendants as hereinafter set forth." These are the only dates or "relevant times" set forth in the complaint. The complaint further alleges that, "at all relevant times hereto, Defendant James J. Pavlovich undertook to provide diagnosis, care[,] and treatment" to Crystal and that, "in undertaking such diagnosis, care[,] and treatment, in spite of various and sundry signs and symptoms, the Defendant James J. Pavlovich failed to administer the vaccine PCV 7 (Prevnar)."

In his answer, the defendant admitted the paragraph alleging that at all relevant times he had undertaken to provide diagnosis, care, and treatment to Crystal. The plaintiff argues on appeal that this

constitutes a binding judicial admission which he could not deny that a physician-patient relationship existed between Dr. Pavlovich and Crystal during her visits to the Carbondale Clinic.

Judicial admissions are defined as deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge. *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998). Where made, a judicial admission may not be contradicted in a motion for a summary judgment or at a trial. *In re Estate of Rennick*, 181 Ill. 2d at 406. In order to constitute a judicial admission, a statement must not be a matter of opinion, estimate, appearance, inference, or uncertain summary. *Thomas v. Northington*, 134 Ill. App. 3d 141, 147 (1985). It must be an intentional statement that relates to concrete facts and not an unclear summary. *Williams Nationalease, Ltd. v. Motter*, 271 Ill. App. 3d 594, 597 (1995).

What constitutes a judicial admission must be decided under the circumstances in each case, and before a statement can be held to be such an admission, it must be given a meaning consistent with the context in which it was found. *Dremco, Inc. v. Hartz Construction Co.*, 261 Ill. App. 3d 531, 536 (1994). It must also be considered in relation to the other testimony and evidence presented. *Thomas*, 134 Ill. App. 3d at 147. "[T]he doctrine of judicial admissions requires thoughtful study for its application so that justice not be done on the strength of a chance statement made by a nervous party." *Thomas*, 134 Ill. App. 3d at 147.

An abuse-of-discretion standard applies when reviewing a circuit court's treatment of judicial admissions. *Dremco, Inc.*, 261 Ill. App. 3d at 536. An abuse of discretion may be found only where no reasonable person would take the view adopted by the circuit court. *Dremco, Inc.*, 261 Ill. App. 3d at 536.

In the circumstances of this case we cannot conclude that the circuit court abused its discretion in ruling that Dr. Pavlovich's answer did not constitute a binding judicial admission that a physician-patient relationship existed during Crystal's visits to the Carbondale Clinic. The only relevant date mentioned in the plaintiff's complaint was the date of Crystal's death as a result of infection. At that time, Dr. Pavlovich was actually Crystal's physician; he had been called to the emergency room of the hospital when Crystal was brought in suffering from the infection that claimed her life. Accordingly, he admitted that he did undertake to diagnose, care for, and treat Crystal. He had never before seen, examined, or treated Crystal. The complaint made no mention of any other dates, nor did it refer to Crystal's visits to the Carbondale Clinic. Before a statement can be held to be a binding judicial admission, it must be given a meaning consistent with the

context in which it was found (*Dremco, Inc.*, 261 Ill. App. 3d at 536), and it must be considered in relation to the other testimony and evidence presented. *Thomas*, 134 Ill. App. 3d at 147. The circuit court did not abuse its discretion in refusing to treat Dr. Pavlovich's answer as a binding judicial admission.

Because the plaintiff was unable to establish a physician-patient relationship between Crystal and the defendant physicians, the circuit court found no duty on which to base a claim of negligence. If a plaintiff is unable to produce a required element of proof in support of her cause of action, then no cause is presented for the jury's consideration and the entry of a directed verdict for the defendant is proper. *Sullivan*, 209 Ill. 2d at 123. The circuit court did not err in entering a directed verdict in favor of the physician defendants.

■ We turn now to the final argument presented by the plaintiff: that the circuit court erred in denying her motion to amend her complaint. Crystal died on March 18, 2002. The original complaint was filed February 2, 2004. On October 22, 2007, long after the expiration of the statute of limitations, the plaintiff filed a motion for leave to file an amended complaint. The proposed amended complaint sought to add a new theory of negligence—that the defendants were negligent in failing to prescribe high-dose amoxicillin when Crystal first became sick with the infection which presumably caused her death. The defendants objected on the ground that the statute of limitations had expired almost three years prior and the motion to amend was not timely. The circuit court denied the plaintiff leave to file the amended complaint.

We conclude that, in light of our disposition of the first two issues raised, we need not address this issue. Even had the amendment been allowed, the plaintiff would not have prevailed on the new theory of negligence for the same reason she could not prevail on the theory advanced in the original complaint. The plaintiff had no expert witness to testify to nurse Dillard's alleged negligence, and she could not establish any duty owed by the defendant physicians to Crystal because there was no physician-patient relationship between them. Any error in the circuit court's denial of the plaintiff's motion for leave to file an amended complaint was harmless.

For the foregoing reasons, the judgment of the circuit court of Jackson County is hereby affirmed.

Affirmed.

WEXSTTEN, P.J., and STEWART, J., concur.