# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Shelton v. OSF Saint Francis Medical Center**, 2013 IL App (3d) 120628

---

| | |
|---|---|
| Appellate Court Caption | PAMELA K. SHELTON, a/k/a, Pamela K. Baker, Plaintiff-Appellant, v. OSF SAINT FRANCIS MEDICAL CENTER, a/k/a OSF Healthcare Systems, an Illinois Non-for-Profit Corporation, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-12-0628 |
| Filed | June 19, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's judicial admission that she was terminated from her position as a nurse at defendant hospital negated her amended complaint alleging that the hospital failed to recall her in retaliation for filing a workers' compensation claim; therefore, summary judgment was properly entered for defendant. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 09-L-283; the Hon. David J. Dubicki, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Nile J. Williamson (argued), of Peoria, for appellant.

Roy G. Davis and Abby J. Clark (argued), both of Davis & Campbell, L.L.C., of Peoria, for appellee.

Panel

PRESIDING JUSTICE WRIGHT delivered the judgment of the court, with opinion.

Justices Holdridge and McDade concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Pamela K. Shelton, also known as Pamela K. Baker, appeals the trial court's order awarding summary judgment in favor of defendant, OSF Saint Francis Medical Center (OSF). On appeal, plaintiff argues the allegations contained in her verified amended complaint did not constitute judicial admissions. We affirm.

¶ 2                                  FACTS

¶ 3    On October 4, 2007, plaintiff injured her right knee while performing employment duties as a registered nurse working in the rehabilitation unit of OSF. From the date of injury, October 4, 2007, until January 3, 2008, the date of plaintiff's surgery to repair her knee, plaintiff continued to work for OSF in the restricted worker program.[1] However, plaintiff was unable to work while she recovered from her surgery.

¶ 4    During this short absence from employment, plaintiff applied for and received workers' compensation. On March 10, 2008, plaintiff's physicians issued orders allowing plaintiff to return to light duty, and she subsequently returned to the restricted worker program because her physician restricted her from performing duties that might require her to lift more than 20 pounds following surgery. In May 2008, plaintiff reached "maximum medical improvement," but she still had a 20-pound weight restriction in place.

¶ 5    On or about May 12, 2008, Jackie Fugitt[2], a human resources representative with OSF,

---

[1]The restricted worker program was a program to allow people to return to work who had working restrictions. It is alternatively known as the volunteer services program throughout the record.

[2]The complaint actually identifies Jackie Fugitt as Jamie Boesecker, but the record reveals that "Jamie" is an error, and Jackie changed her last name from Boesecker to Fugitt after her marriage.

advised plaintiff she should begin searching for a new position at the hospital or she would be terminated from employment within 30 days. Fugitt explained in her deposition that plaintiff's situation was Fugitt's first workers' compensation case. She also admitted her statement that plaintiff would be terminated after 30 days was inaccurate. Fugitt stated her error resulted from her misunderstanding of a directive Fugitt received from Lisa Stahlberg, a legal advisor with OSF.

¶ 6    According to Fugitt, Stahlberg instructed Fugitt to assist plaintiff with her job search over the next 30 days. Fugitt mistakenly interpreted this statement to mean plaintiff would be terminated from her current position if plaintiff did not secure a new job assignment within the next 30 days. According to Fugitt, the "thirty-day time reference *** has been for employees that for various reasons can no longer perform in their current position, so [OSF] give[s] them thirty days to apply for positions and interview in hopes of being offered another one."

¶ 7    Although plaintiff interviewed for several different positions at OSF during the 30-day time frame, she did not receive any employment offers following those interviews. On June 2, 2008, plaintiff received a letter from Fugitt indicating plaintiff's employment with OSF would terminate on Wednesday, June 18, 2008. On June 17, 2008, plaintiff called Fugitt and left a message asking her where she should return her employee items, including her employee identification badge.

¶ 8    On Friday, June 20, 2008, Cindi Hoggard, another human resources representative with OSF who was acting for Fugitt while Fugitt was on vacation, called plaintiff on that date and left a phone message for plaintiff informing her that her employment with OSF was not terminated. Hoggard explained in her deposition that it was her understanding OSF "did not terminate employees after thirty days if they were a Workman's Comp case." Hoggard left a message for plaintiff to return to work on Monday, June 23, 2008, in the restricted worker program.[3]

¶ 9    Plaintiff returned Hoggard's phone call on Monday, June 23, 2008, and left her a voice message that plaintiff could not return to work at OSF immediately because she had an interview arranged within OSF and another interview arranged with an organization outside OSF. In addition, plaintiff claimed that, after she moved to Yorkville approximately a week after her alleged termination, she asked Hoggard to find her a position at an OSF-affiliated hospital located closer to Yorkville.[4]

---

[3]Hoggard described a different timeline of events in her deposition. She stated she received a message from plaintiff on June 18, 2008, regarding plaintiff's termination. Hoggard returned plaintiff's call on Thursday, June 19, 2008, and informed plaintiff she was not terminated. According to Hoggard, plaintiff stated she could not return to work that Friday, June 20, 2008, because she had additional interviews arranged.

[4]Plaintiff married her husband on May 31, 2008, and moved to Yorkville after her employment allegedly ended on June 18, 2008. Plaintiff appears to have been confused about the dates of events in her deposition, and it is therefore unclear when she moved to Yorkville. She stated at one point in her deposition that she had already been in Yorkville for a week when she received

¶ 10    On June 27, 2008, plaintiff sent OSF's human resources department a letter requesting clarification on her employment status. In that letter, she stated she was "terminated," and she asserted that OSF would have to honor that termination.[5]

¶ 11    On July 16, 2008, Timothy J. Newlin, an attorney working for OSF, wrote a letter to Art Kingery, plaintiff's workers' compensation attorney, stating:

> "What I clearly wish to convey to you, Art, and for you to convey to the [plaintiff] is that the [plaintiff] can still save her position by contacting Jacki [Fugitt], the HR Representative, immediately. Please advise immediately regarding the [plaintiff's] position concerning her employment with OSF St. Francis Medical Center."

On July 25, 2008, Kingery replied to OSF's letter by stating plaintiff had relocated to Yorkville, accepted a new position with another employer, and would not be returning to work at OSF.

¶ 12    On August 8, 2008, Hoggard sent a letter to plaintiff indicating OSF accepted her "resignation" on July 25, 2008. Plaintiff did not submit further correspondence to OSF.

¶ 13    On September 4, 2009, plaintiff filed a verified single-count complaint with the heading "Retaliatory Discharge." The complaint alleged that plaintiff was "terminated without cause" after she had exercised her rights under the Illinois Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 2010)), and plaintiff sought relief under section 4(h) of the Act (820 ILCS 305/4(h) (West 2010)).

¶ 14    In preparation for a jury trial scheduled for August 8, 2011, the parties agreed to a joint statement of the case to be read to the jury, which provided as follows:

> "[Plaintiff] claims that she was discharged in June 2008 and that OSF Saint Francis Medical Center did so to retaliate against her for filing a workers' compensation claim."

However, the first trial resulted in a mistrial after plaintiff's attorney told potential jurors during *voir dire* that plaintiff's theory of the case was based on OSF's failure to rehire plaintiff to a suitable position after she recovered from her injury, which contradicted the theory of the case presented to the jury in the prepared statement of the case.

¶ 15    On December 13, 2011, plaintiff filed an amended complaint. She removed the "Retaliatory Discharge" heading from the original complaint but once again sought relief under section 4(h) of the Act. In paragraph 3 of the amended complaint, plaintiff alleged she was "a registered nurse in the employ of OSF since 2005 and *was terminated* without cause on or about June 18, 2008." (Emphasis added.) The plaintiff further stated in paragraph 14 that "as a direct and proximate result of [OSF]'s actions as aforesaid in *terminating* plaintiff and refusing to rehire or recall her to suitable capacities for her exercise of rights under the

---

the call from Hoggard asking her to return to work, but in another part of her deposition stated she was still living in Peoria, not Yorkville, on June 20, 2008, which was the date she stated she received the voice message from Hoggard.

[5]Plaintiff explained in a January 3, 2011, affidavit that her language was meant as a request that OSF honor its commitment as stated in the termination letter to continue to allow plaintiff to apply to other jobs at OSF and its affiliates.

Illinois Workers' Compensation Act plaintiff has sustained and will sustain pain and suffering." (Emphasis added.)

¶ 16    OSF's answer to paragraph 3 of the amended complaint admitted plaintiff's date of birth and admitted she was employed as a registered nurse at OSF until June 18, 2008. OSF denied the remainder of the allegations in paragraph 3.

¶ 17    On June 1, 2012, OSF filed a motion for summary judgment on the amended complaint. OSF asserted that plaintiff's retaliatory failure to recall claim was not a viable cause of action because plaintiff alleged she was wrongfully terminated on June 18, 2008. In the motion for summary judgment, OSF attached the depositions of plaintiff, Hoggard, and Fugitt.

¶ 18    During the July 2, 2012, hearing on the motion for summary judgment, the court questioned plaintiff's attorney about his use of the word "termination" in the amended complaint. Plaintiff's attorney responded:

"MR. WILLIAMSON [plaintiff's attorney]: It's in there because the parties act in accordance with [the June 18, 2008, letter], without a doubt, I have to have it in there.

THE COURT: You don't have to–you don't have to say she was terminated, I mean–

MR. WILLIAMSON: Judge, for a period of time she was, for 30 days she's told she's terminated, told you have to get another job at OSF, and for that 30-day window, from the time the letter is sent until the time OSF realizes the mistake, she is for all practical purposes terminated."

¶ 19    On July 10, 2012, the court issued a written decision finding plaintiff's verified amended complaint admitted OSF terminated plaintiff's employment on June 18, 2008. The court reasoned that the admission did not result from mistake or inadvertence because plaintiff consistently repeated the admission concerning termination in the agreed statement of the case, during the hearing on the motion for summary judgment on July 2, 2012, during plaintiff's deposition testimony, and in plaintiff's June 27, 2008, letter to OSF. Therefore, the court found this allegation constituted a judicial admission, which was fatal to plaintiff's cause of action based on retaliatory failure to recall her to employment. Consequently, the court granted summary judgment in favor of OSF. Plaintiff appeals.

¶ 20                                    ANALYSIS

¶ 21    On appeal, plaintiff argues the trial court incorrectly granted summary judgment in favor of OSF on the amended complaint because the allegations of the verified amended complaint did not qualify as a judicial admission. Alternatively, plaintiff submits there is a genuine issue of material fact concerning whether OSF terminated plaintiff's employment or failed to recall her as a laid-off employee following her workers' compensation claim. In contrast, OSF argues that plaintiff's repeated statements, including those in her verified amended complaint alleging OSF terminated her employment on June 18, 2008, clearly constitute a judicial admission that her employment was terminated and defeats any cause of action based on a single theory of retaliatory failure to *recall*.

¶ 22    Summary judgment is proper when "the pleadings, depositions, and *admissions* on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." (Emphasis added.) 735 ILCS 5/2-1005(c) (West 2010). As the grant of summary judgment is a question of law, our review is *de novo*. *Richard W. McCarthy Trust v. Illinois Casualty Co.*, 408 Ill. App. 3d 526, 533 (2011).

¶ 23 In addition, we review a trial court's ruling on a judicial admission for an abuse of discretion. *Serrano v. Rotman*, 406 Ill. App. 3d 900, 907 (2011). Therefore, we will review the trial court's decision on a judicial admission for an abuse of discretion, and then review *de novo* whether the trial court, after finding plaintiff had made a binding judicial admission, properly granted summary judgment.

¶ 24 Judicial admissions are defined as "deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." *Smith v. Pavlovich*, 394 Ill. App. 3d 458, 468 (2009). A judicial admission may not be contradicted by evidence at trial or on a motion for summary judgment. *Id.* Whether a statement constitutes a judicial admission "must be decided under the circumstances in each case, and before a statement can be held to be such an admission, it must be given a meaning consistent with the context in which it was found." *Id.* The case law provides that a factual admission in a verified pleading that is not the result of mistake or inadvertence constitutes a binding judicial admission on the party making the admission and, even after amending the pleading, the party cannot contradict the admission. *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 31.

¶ 25 Plaintiff's allegations in her amended complaint asserting that OSF terminated her employment on June 18, 2008, involved factual statements within her knowledge. These assertions appeared twice in her verified amended complaint. First, in paragraph 3 of the amended complaint, plaintiff alleged she had been employed by OSF since 2005 and was terminated without cause on June 18, 2008. Second, in paragraph 14 of the amended complaint, plaintiff claims she suffered monetary damages resulting from OSF's actions in terminating her employment.

¶ 26 The trial court found the verified amended complaint contained plaintiff's admission that OSF terminated her employment, and the court also found this admission did not result from inadvertence or mistake. We carefully consider these findings.

¶ 27 Plaintiff's deposition, which was attached to OSF's motion for summary judgment, included plaintiff's testimony that she was terminated. In addition, plaintiff's own letter to OSF, dated June 27, 2008, which was attached as an exhibit to plaintiff's deposition, demanded OSF should honor her "termination." The trial court further noted the agreed statement of the case prepared for the August 8, 2011, trial stated OSF "discharged" plaintiff in retaliation for filing a workers' compensation claim. Accordingly, we conclude the trial court did not abuse its discretion by finding that plaintiff's verified amended complaint and numerous statements created a binding judicial admission that OSF terminated her employment and was not the result of inadvertence or mistake.

¶ 28 Next, we turn to the issue of whether the judicial admission defeated an action for retaliatory failure to *recall* an employee and thus supported summary judgment in favor of OSF as a matter of law. The court in *Webb v. County of Cook*, 275 Ill. App. 3d 674, 678 (1995), clearly articulated the three separate causes of action available to a former employee

under section 4(h) of the Act: retaliatory discharge, retaliatory failure to rehire, and retaliatory failure to recall. The court explained:

"An employee, whether regular or seasonal, who has been fired by his or her employer may generally only sue for retaliatory discharge. We distinguish the foregoing cause of action from those available where the employee has not, in fact, been fired. Where the employee has not been fired, a seasonal employee may only sue for retaliatory failure to rehire, and a regular employee on leave or temporary layoff may sue for retaliatory failure to recall. Within the context of the Act, therefore, the terms 'rehire' and 'recall' should not be used interchangeably." *Id.*

¶ 29 Contrary to the court's directive that the terms "rehire" and "recall" may not be used interchangeably in the context of employees that have *not* been terminated, plaintiff urged this court to abandon this distinction during oral arguments before this court. We will not address whether the terms "rehire" and "recall" involve distinctions without a difference because the case law clearly provides these two terms *never* come into play if an employee has been terminated. *Id.* The request for our court to chart a new course ignores the fact that in all cases, once an employee has been terminated for any reason, including voluntary termination by the employee, the employee falls into a distinct category of former employees that cannot compel their employer to recall or rehire them.

¶ 30 To the degree that plaintiff's argument suggests that the categories of retaliatory discharge, retaliatory refusal to recall, and retaliatory refusal to rehire defined in *Webb* are not useful, we disagree. Plaintiff's confusion in this case is based on a refusal to recognize that there is a crucial difference in the relationship between an employee who was terminated in retaliation for an injury-related claim, and an employee who was laid off or temporarily let go before the retaliatory conduct by the employer took place. The distinction is important because in order to sustain a cause of action that the laid-off or seasonally hired employee would have been recalled or rehired, there has to be the possibility that the employee would be permitted to return. *Klinkner v. County of Du Page*, 331 Ill. App. 3d 48, 51 (2002). However, a terminated employee will not be permitted to return, absent a statutory requirement of reinstatement, because our courts, to date, will not force an ongoing employment relationship between hostile parties when monetary damages can sufficiently compensate an employee for unfair discharge. *Webb*, 275 Ill. App. 3d at 677.

¶ 31 We are unwilling to deviate from long-existing precedent by stating a terminated employee may pursue a cause of action against a former employer for retaliatory failure to recall or rehire after termination, because to do so potentially places a duty on an employer to restore employment that does not currently exist. Consequently, an admission that an employee was terminated is generally fatal to a claim of retaliatory refusal to rehire or recall. *Klinkner*, 331 Ill. App. 3d at 52.

¶ 32 In this case, plaintiff judicially admitted she was terminated. Since there is no cause of action for either failing to recall or failing to rehire a terminated employee, plaintiff's judicial admission that she was a terminated employee extinguishes the remedy associated with the alleged failure to recall.

¶ 33 Plaintiff also argues that summary judgment was improper because OSF denied in both

the original and amended complaint that OSF terminated plaintiff on June 18, 2008. While OSF consistently denied *retaliatory* termination occurred on June 18, 2008, OSF could properly argue plaintiff's cause of action for retaliatory failure to recall was contradicted by plaintiff's binding judicial admission that her employment was terminated, thereby extinguishing her ability to assert her status as a laid off employee subject to recall.[6] Further, it is not unheard of for litigants to take contrary positions in summary judgment motions. See *Roman Catholic Diocese of Joliet, Inc. v. Lee*, 292 Ill. App. 3d 447, 453 (1997) (insurance company denied first sexual contact of minor occurred in 1985, but assumed so for purposes of summary judgment).

¶ 34    Having decided that plaintiff judicially admitted OSF terminated her employment, the trial court properly awarded summary judgment in favor of OSF with respect to the amended complaint. Therefore, we affirm the trial court's award of summary judgment in favor of OSF.

¶ 35                                    CONCLUSION

¶ 36    For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 37    Affirmed.

---

[6]At oral arguments, the attorney for OSF stated that in its answer to the amended complaint, it was not denying that plaintiff was terminated, but only denied that plaintiff was terminated on June 18, 2008.