2020 IL App (1st) 190282-U

FIRST DISTRICT,
SECOND DIVISION
May 19, 2020

No. 1-19-0282

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| DUSSIAS SKALLAS WITTENBERG, LLP, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 2016 CH 8232 |
| | ) | |
| CLAUDINE MINOGUE, | ) | Honorable |
| | ) | David B. Atkins, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   (1) In breach of contract action, summary judgment for plaintiff was proper where defendant admitted existence of oral contract and its essential terms.  (2) Trial court did not err in granting fee petition without evidentiary hearing.  (3) Trial court's judgment did not violate provisions of Illinois Marriage and Dissolution of Marriage Act governing fee petitions.

¶ 2    Defendant Claudine Minogue retained plaintiff Dussias Skallas Wittenberg, LLP, to

represent her in marital dissolution proceedings.  When Claudine failed to pay in full for DSW's

legal services, DSW filed the instant breach of contract suit. The trial court granted summary judgment to DSW and subsequently granted DSW's fee petition in the amount of $81,742.23.

¶ 3    Claudine now appeals, arguing: (1) issues of material fact preclude entry of summary judgment; (2) the trial court erred by granting DSW's fee petition without an evidentiary hearing; and (3) the trial court's judgment fails to comply with section 508 of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (750 ILCS 5/508 (West 2018)), which governs fee petitions in marital dissolution proceedings. For the reasons that follow, we affirm.

¶ 4                                    BACKGROUND

¶ 5    On October 26, 2015, Claudine consulted with Dean Dussias, a senior partner at DSW, and agreed to retain Dussias in connection with a marital dissolution proceeding against her husband, Jeffrey Minogue. Three days later, Claudine paid DSW an initial retainer fee of $10,000. However, according to DSW, she failed to make any further payments over the next several months of litigation. DSW moved to withdraw as Claudine's counsel, and the divorce court granted DSW's motion on March 11, 2016.

¶ 6    On June 20, 2016, DSW filed the instant lawsuit against Claudine, alleging that Claudine failed to pay $83,032.23 in attorney fees and costs. DSW sought damages for breach of contract, or, in the alternative, on a theory of *quantum meruit*.

¶ 7    In her answer, Claudine admitted the existence of an oral contract as follows:

> "CLAUDINE admits the allegation *** that she met with Mr. Dean S. Dussias at his Chicago office regarding representation in connection with a marital dissolution proceeding. CLAUDINE further admits the allegation that she entered into an oral agreement with Dean Dussias on or about October 26, 2015 ***.
>
>                                    ***

CLAUDINE admits that DSW LLP rendered legal services on her behalf and incurred some costs, which she accepted."

However, she denied that DSW fully performed its obligations to her, and she further denied DSW's allegation that she failed to make any payments beyond the initial $10,000 retainer.

¶ 8        On January 13, 2017, Claudine moved to add Jeffrey as a necessary party to the lawsuit. In support, she alleged that payment of the $10,000 retainer exhausted her financial resources. She further alleged that DSW was aware of her lack of financial resources when it chose to represent her, and it knew that to obtain full compensation for its services, it would need to seek contribution from Jeffrey pursuant to the IMDMA.

¶ 9        The trial court denied Claudine's motion, since Claudine and DSW were the only parties to the contract at issue; Jeffrey was not a party, nor did DSW perform any services on his behalf. The court further stated, "To the extent the defendant wishes to file a third-party claim for affirmative relief against Jeffrey Minogue or any other party, she is free to do so."

¶ 10        Claudine did not file a third-party claim, nor did she seek or obtain any discovery. After discovery closed, DSW moved for summary judgment on both counts of its complaint. Regarding its breach of contract claim, DSW pointed out that Claudine admitted that she entered into a contract with DSW and that DSW provided her legal services. DSW further stated that Claudine "does not have any defense to Plaintiff's breach of contract claim. She just has not paid."

¶ 11        In her response, Claudine again admitted the existence of an oral contract, but she alleged that her contract was solely with Dussias, "and that he, specifically, would act as her attorney, which did not happen." Instead, she stated that other DSW attorneys rendered services on her behalf—including securing for her an emergency order of protection, exclusive possession of the

marital home, and sole care of the children over an extended period of time—all of which she claimed was in contravention of her contract with Dussias. She additionally argued that the dispute as to who was to perform legal services for her constituted a material issue of fact as to the terms of the contract. Despite claiming that DSW's allegations regarding the terms of the contract "would be rebutted by Defendant's testimony," she did not attach any affidavit or deposition testimony in support.

¶ 12    Additionally, Claudine asserted that the only fee she agreed to pay was the $10,000 retainer and that the claimed fees in DSW's complaint were "not reasonable." As for DSW's statement that "[s]he just has not paid," Claudine claimed to lack sufficient knowledge to form a belief as to its veracity.

¶ 13    On April 29, 2018, the trial court granted DSW's motion for summary judgment on its breach of contract claim, finding that the undisputed facts in light of Claudine's admissions were sufficient to establish DSW's right to recovery. The court further stated:

> "Defendant's questions of fact regarding who was to represent her and who first breached the agreement, while genuine, are not material as to the terms of the oral contract. Even if the Court were to assume Defendant contracted exclusively with Dean Dussias and the work done by other attorneys breached that agreement, she has admitted to accepting those services and the costs incurred [citations]—behavior clearly constituting waiver of her rights."

But the court denied summary judgment as to damages, since DSW presented no factual basis for the amount claimed in its complaint. The court additionally denied summary judgment on DSW's *quantum meruit* claim, since it found the parties had a valid and enforceable contract.

¶ 14        DSW filed a fee petition in which it stated that Claudine's case was a "uniquely complex case" that required substantially more time than a typical divorce case. Beginning in October 2015 and every month thereafter, DSW sent detailed billing statements to Claudine. DSW submitted copies of these statements to the trial court *in camera*. DSW also submitted affidavits from its attorneys attesting to their experience, the work performed on Claudine's behalf, and the reasonableness of their fees. Finally, DSW submitted various documents from the divorce action, including numerous letters sent to Claudine from DSW counsel other than Dussias.

¶ 15        Claudine filed a response in which she admitted that DSW expended "substantial time and resources" representing her; that her case was "uniquely complex"; and that the attorneys working on her case were "extremely qualified and experienced" in divorce matters. She also admitted receiving DSW's monthly billing statements. She nevertheless argued that the court should hold an evidentiary hearing on the fee petition because "there is a complete lack of evidence on the record as to the terms of the contract." She stated that if the court accepted her interpretation of the contract—*i.e.*, that she contracted for Dussias' services alone—then DSW would not be entitled to compensation for any of the work done by its other attorneys.

¶ 16        On November 5, 2018, the trial court, having reviewed the parties' submissions, awarded DSW $81,742.23 in legal fees and costs plus postjudgment interest. The court denied Claudine's request for an evidentiary hearing, stating:

> "The court reiterates that, even if [Claudine] had contracted exclusively for the services of Dean Dussias, she admitted to accepting DSW's services and associated costs, waiving any purported breach or noncompliance. The exhibits attached to DSW's motion further reinforce this holding as, from the outset of her case, [Claudine] had *extensive*, if not almost *exclusive*, communication with and representation by attorneys

other than Dussias between October 2015 and March 2016. She has not and cannot now refute her conscious acceptance of the services provided and costs incurred." (Emphasis in original.)

¶ 17    On November 20, 2018, Claudine filed a motion to reconsider, arguing, among other things, that reconsideration was appropriate based on section 508 of the IMDMA (750 ILCS 5/508 (West 2018)), which governs fee petitions in marital dissolution proceedings. As shall be discussed in greater detail below, Claudine argued that resolution of DSW's fee petition was premature because the divorce was not yet finalized and the court had not held a hearing as to whether Jeffrey should be required to contribute to her attorney fees. Claudine also argued that the trial court erred by denying her "the right to name her husband as a third-party defendant."

¶ 18    The trial court denied Claudine's motion for reconsideration on January 24, 2019, finding that Claudine waived her arguments under the IMDMA by failing to raise them earlier.

¶ 19                                    ANALYSIS

¶ 20    Claudine argues that the trial court erred in (1) granting summary judgment when there were material issues of fact as to the terms of the contract, (2) granting DSW's fee petition without an evidentiary hearing, and (3) denying her motion for reconsideration based on section 508 of the IMDMA. We consider these arguments in turn.

¶ 21                                Summary Judgment

¶ 22    We review the trial court's grant of summary judgment *de novo* (*Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008)), keeping in mind that summary judgment is appropriate where "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). To prevail, the nonmoving party must

present some evidence that would arguably entitle her to recover at trial. *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 472 (2010).

¶ 23    The trial court granted summary judgment to DSW based on its finding that Claudine judicially admitted the existence of a contract, its essential terms, DSW's performance, and her own failure to perform. Specifically, in exchange for DSW's representation in her divorce proceeding, Claudine agreed to provide a $10,000 retainer and be billed for fees and costs incurred. Pursuant to their agreement, DSW provided legal services on her behalf and incurred costs that she accepted.

¶ 24    A judicial admission is defined as a deliberate, clear, unequivocal statement by a party about a concrete fact within her knowledge. *Smith v. Pavlovich*, 394 Ill. App. 3d 458, 468 (2009) (citing *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998)). "[I]f a fact is judicially admitted, the adverse party has no need to submit any evidence on that point. The admission serves as a substitute for proof at trial." *North Shore Community Bank and Trust Co. v. Sheffield Wellington LLC*, 2014 IL App (1st) 123784, ¶ 102. We review the trial court's treatment of judicial admissions under an abuse of discretion standard. *Smith*, 394 Ill. App. 3d at 468. Here, we find no abuse of discretion in the trial court's treatment of Claudine's numerous admissions.

¶ 25    Claudine does not attempt to contradict her prior judicial admissions, nor can she do so. See *North Shore Community Bank*, 2014 IL App (1st) 123784, ¶ 103 ("a party cannot create a factual dispute by contradicting a previously made judicial admission in a motion for summary judgment" (internal quotation marks omitted)). Instead, Claudine alleges that when she retained DSW, she only intended for Dussias to work on her case, not any other DSW attorneys. To the extent that DSW intended differently, she argues that there was no "meeting of the minds" as needed to create a valid and enforceable contract. Alternately, she argues that there is a material

issue of fact as to who was supposed to work on her case (and, concomitantly, for whose services she is required to pay).

¶ 26    But even assuming *arguendo* that Claudine believed she only contracted for Dussias' services, she waived any such provision by her continued and ongoing acceptance of representation by other DSW attorneys. " 'Waiver of a contract term may occur when a party conducts itself in a manner which is inconsistent with the subject clause, thereby indicating an abandonment of its contractual right.' " *Amerisure Mutual Insurance Co. v. Global Reinsurance Corp. of America*, 399 Ill. App. 3d 610, 617 (2010); see also *Whalen v. K-Mart Corp.*, 166 Ill. App. 3d 339, 343 (1988) (waiver of a contractual term "may be established by conduct indicating that strict compliance with the contractual provisions will not be required"). This doctrine prevents the waiving party from lulling the other party into believing that strict compliance with its contractual duties will not be required and then asserting her contractual rights in a suit. *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 674 (2007). Here, Claudine admitted to receiving and accepting services from other DSW attorneys, behavior which clearly constitutes waiver of her rights.

¶ 27    Finally, Claudine argues this case is analogous to *Johannesen v. Eddins*, 2011 IL App (2d) 110108. We find *Johannesen* readily distinguishable. At issue in *Johannesen* was whether defendant contractually waived his rights under the Citizen Participation Act (735 ILCS 110/15 (West 2008) (protecting "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government")) to participate in a zoning proceeding. *Johannesen*, 2011 IL App (2d) 110108, ¶ 18. The *Johannesen* court found that this issue could not be resolved on a motion to dismiss, since there was a factual dispute as to whether the parties made an oral contract, and, if so, what its terms were. *Id.* ¶ 22.

¶ 28    Here, by contrast, Claudine has judicially admitted the existence of the contract and its essential terms. *Johannesen* does not preclude the entry of summary judgment under these facts. Accordingly, we affirm the trial court's grant of summary judgment in favor of DSW.

¶ 29                          DSW's Fee Petition

¶ 30    Claudine next argues that the trial court erred by granting DSW's fee petition without first holding an evidentiary hearing. We review the trial court's award of attorney fees for an abuse of discretion. *Cavitt v. Repel*, 2015 IL App (1st) 133382, ¶ 58.

¶ 31    Claudine relies primarily on *Trossman v. Philipsborn*, 373 Ill. App. 3d 1020, 1057 (2007), in which the court stated: "[W]hen the [party against whom fees are sought] asks for an evidentiary hearing, *provided there exists a genuine factual dispute as to the reasonableness of the fees and costs*, he is entitled to one." (Emphasis added and internal quotation marks omitted.)

¶ 32    *Trossman* was a highly protracted suit that involved 10 parties and lasted over seven years; the plaintiff, Trossman, changed attorneys on multiple occasions and sometimes employed multiple firms at once. After the entry of judgment, Trossman sought and was granted attorney fees and costs he expended in defending against counterplaintiffs' counterclaim only. *Id.* at 1023. His fee petition sought over $400,000. Counterplaintiffs asserted this amount was "grossly inflated," since their own fees and costs for the counterclaim totaled approximately $100,000, and they also claimed Trossman was improperly seeking reimbursement for fees that were unrelated to the counterclaim. *Id.* at 1036-37. Under these facts, the *Trossman* court held that an evidentiary hearing was necessary, emphasizing that "fee determinations in complex cases should only be made after careful weighing of all pertinent evidence." *Id.* at 1058.

¶ 33    We later clarified *Trossman* in *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 113, stating:

"[T]rial courts faced with fee petitions need not conduct evidentiary hearings as a matter of course. We do not read *Trossman* as requiring a hearing in every case. [Citation.] To the extent it can be so interpreted, we disagree. Rather, a fee petition warrants an evidentiary hearing only when the response of the party to be charged with paying the award raises issues of fact that cannot be resolved without further evidence."

In particular, we stated that hourly rates charged by counsel "generally" should not require an evidentiary hearing, because they can be established through attestations of counsel and affidavits of attorneys in the field. *Id.* ¶ 114; see also *Trossman*, 373 Ill. App. 3d at 1057 (discussing cases in which an evidentiary hearing was not required because the fee petition was supported by attorney affidavits that were not rebutted by the opposing party) (citing *Heritage Pullman Bank & Trust Co. v. Carr*, 283 Ill. App. 3d 472, 481 (1996); *Aroonsakul v. Flanagan*, 155 Ill. App. 3d 223, 229 (1987)).

¶ 34    Based on *Young*, and under the facts of this case, the trial court did not err in ruling on DSW's petition without an evidentiary hearing. DSW supported its petition with copies of detailed monthly billing statements that it sent to Claudine during the course of the representation. DSW also attached affidavits of multiple attorneys attesting as to their hourly rates, which they asserted were comparable to or less than the rates of other attorneys in the field with their experience. In response, Claudine asserted vaguely that DSW's affidavits were insufficient to establish "the reasonableness of the oral contract," but aside from this conclusory statement, she did not present evidence to rebut DSW's claims. She did not, for instance, dispute the veracity or reasonableness of DSW's claimed billing hours, nor did she present any evidence

to show that the hourly rates of DSW's attorneys were unreasonable. Thus, unlike in *Trossman*, there was not "a genuine factual dispute as to the reasonableness of the fees and costs" claimed by DSW. (Internal quotation marks omitted.) *Trossman*, 373 Ill. App. 3d at 1057.

¶ 35    Claudine nevertheless argues that an evidentiary hearing was necessary because essential terms of the contract were in dispute—in particular, whether she agreed to pay for the services of Dussias alone or the services of other DSW attorneys. For reasons discussed above, we find that Claudine has waived any such argument. See *Amerisure Mutual Insurance*, 399 Ill. App. 3d at 617. Accordingly, the trial court did not abuse its discretion in granting DSW's fee petition without an evidentiary hearing.

¶ 36    Claudine additionally argues that DSW lacked standing to pursue fees because, during the course of the litigation, it changed its firm name to "Dussias Wittenberg Koenigsberger LLP" and filed its fee petition under that name. But Claudine presents no legal authority in support of her standing argument, which is thereby forfeited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); see *Epstein v. Davis*, 2017 IL App (1st) 170605, ¶ 24 ("[T]he section of [appellant's] appellate brief addressing the motion *in limine* consists only of argument and fails to cite a single case, statute, or legal authority. We therefore consider the issue forfeited.").

¶ 37                              Section 508 of the IMDMA

¶ 38    Finally, Claudine argues that the trial court should have granted her motion for reconsideration based on section 508 of the IMDMA, which governs fee petitions in marital dissolution proceedings. DSW argues that Claudine's argument is forfeited and, in any event, lacks merit. We agree.

¶ 39    We review the trial court's denial of a motion for reconsideration on an abuse of discretion standard. *Jones v. Live Nation Entertainment, Inc.*, 2016 IL App (1st) 152923, ¶ 29.

Here, the trial court found that Claudine forfeited her section 508 argument by raising it for the first time in her motion for reconsideration. It is well settled that "[a] party may raise a new issue for the first time in a motion to reconsider only when a party has a *reasonable explanation* for why it did not raise the issue earlier in the proceedings." (Emphasis in original.) *In re Marriage of Epting*, 2012 IL App (1st) 113727, ¶ 41. Because Claudine has not provided any such explanation, we find no abuse of discretion in the trial court's denial of her motion.

¶ 40    Nor do we find any merit in Claudine's interpretation of the IMDMA. Section 508 sets forth two alternative methods by which counsel in a dissolution of marriage proceeding may pursue recovery of attorney fees from their own client or former client. First, counsel may file a Petition for Setting Final Fees and Costs in the dissolution proceeding. 750 ILCS 5/508(c) (West 2018). Such petitions are governed by section 508(c), which provides, in relevant part:

> "(2) No final hearing under this subsection (c) is permitted unless: *** (iii) judgment in any contribution hearing on behalf of the client has been entered or the right to a contribution hearing under subsection (j) of Section 503 has been waived." *Id.*

See also 750 ILCS 5/503(j) (West 2018) (providing that parties in a dissolution action may file a petition for contribution to fees and costs incurred in the proceeding).

¶ 41    Alternatively, counsel may file an independent breach of contract action under section 508(e):

> "(e) Counsel may pursue an award and judgment against a former client for legal fees and costs in an independent proceeding in the following circumstances:
>
> > (1) While a case under this Act is still pending, a former counsel may pursue such an award and judgment at any time subsequent to 90 days after the

entry of an order granting counsel leave to withdraw." 750 ILCS 5/508(c) (West 2018).

¶ 42        Claudine argues that resolution of DSW's fee petition was premature under section 508(c)(2)(iii), since the court did not hold a section 503(j) hearing as to whether Jeffrey should be required to contribute to her attorney fees. But, by its plain language, section 508(c)(2) applies only to a "final hearing under this subsection (c)." 750 ILCS 5/508(c) (West 2018). DSW did not file a section 508(c) Petition for Setting Final Fees and Costs; instead, it filed an independent proceeding against Claudine pursuant to section 508(e). Contrary to Claudine's assertion, DSW did not thereby "circumvent the IMDMA," since section 508(e)(1) explicitly permits counsel to file an independent action for recovery of fees while the underlying dissolution action is still pending, as long as more than 90 days have passed since counsel was granted leave to withdraw.[1] Thus, the trial court was not required to hold a section 503(j) hearing before ruling on DSW's fee petition.

¶ 43        Lastly, Claudine contends that the trial court erred by barring her from naming Jeffrey as a third-party defendant. The record flatly refutes this contention. In its January 13, 2017 order, the trial court explicitly stated that "[t]o the extent the defendant wishes to file a third-party claim for affirmative relief against Jeffrey Minogue or any other party, she is free to do so." Claudine did not file any such claim and cannot now blame the trial court for her own inaction.

¶ 44                                              CONCLUSION

¶ 45        For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 46        Affirmed.

---

[1] DSW was granted leave to withdraw as Claudine's counsel on March 11, 2016, and filed the present action 101 days later on June 20, 2016.